GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY
v. J. P. FINK.

Decided December 20, 1906.

**1.—Entering Train—General Demurrer—Construction of Pleading.**

In a suit for personal injuries received while boarding a train, plaintiff alleged that "before he could ascend the steps and enter the car the engineer was signaled to go ahead, and the train started before he was able to get on said car with his valises." Held, as against a general demurrer, the allegation should be construed to mean that the plaintiff was ascending the steps of the car at the time it started, and not that the car was in motion when he started to get on, and hence contributory negligence, as a matter of law, did not appear from the face of the petition.

**2.—Same—Contributory Negligence—Evidence.**

Where it appeared from the testimony that plaintiff had gotten on the steps of the car before it started, and the sudden moving of the train almost threw him off, and in holding on and regaining his position on the steps he so wrenched and strained himself as to cause the injuries alleged, the court properly refused to instruct a verdict for defendant on the ground that plaintiff was guilty of contributory negligence. Such case is not the same as that of one who attempts to board a moving train.

**3.—Expert Witness—Cross-Examination.**

Where a medical expert had testified for plaintiff that, although plaintiff had been ruptured some time before the accident alleged, he had been treated in a certain way by the witness, and had entirely recovered; and a medical expert for defendant had testified that the treatment described would not have cured the plaintiff by the time of the accident, it was permissible for plaintiff, on cross-examination of defendant's expert, to show that his opinion was not as likely to be correct as that of the physician who had examined and treated the plaintiff.

**4.—Charge Not on Weight of Evidence.**

The court used the following language in its charge: "The plaintiff sues the defendant corporation for alleged injuries he received while attempting to board and enter defendant's train." Held, not on the weight of evidence.

**5.—Duty to Passengers Boarding Train—Charge.**

Charge upon the duty of railroads to passengers boarding their trains considered, and held not reversible error.

**6.—Measure of Damages—Charge Approved.**

In a suit for personal injuries the court charged the jury as follows: "If you find for plaintiff you will find such damages as will reasonably compensate him for injuries received, if any. You will estimate any injuries, if any, thus far sustained, any loss by impairment of capacity to earn wages, any pain or suffering, or mental anguish, if any, and if his injuries are permanent you will find such further damages which, if paid now, will compensate him for any future injuries, if any." Held, not subject to the objection that it authorized a double recovery.

**7.—Relation of Passenger and Carrier— Payment of Fare.**

Where plaintiff alleged that he had purchased a ticket before boarding defendant's train, or that he intended to pay fare, and did pay the same after boarding the train, it was sufficient to establish the relation of passenger and carrier.

Appeal from the District Court of Fayette County. Tried below before Hon. L. W. Moore.

*Baker, Botts, Parker & Garwood* and *Brown & Lane,* for appellant.— The court erred in overruling defendant's general demurrer to plaintiff's petition. Texas Midland R. R. Co. v. Ellison, 12 Texas Ct. Rep., 983.

The pleadings and the uncontradicted evidence adduced at the trial of this cause in the lower court established contributory negligence on the part of appellee. Therefore, the court should have instructed a verdict for the defendant, as asked for in its charges. Texas Midland Ry. v. Ellison, 12 Texas Ct. Rep., 983.

If the facts called for by a question propounded to a witness are such as can be detailed and placed before the jury so that the jurors, as men of ordinary intelligence, can fully understand the matter, and draw proper inferences and conclusions, then there is no necessity for opinion evidence. Such evidence, in such a case, whether the opinion of an expert or non-expert, is inadmissible. 1 Elliott on Evidence, sec. 672; Citizens Ry. Co. v. Robertson, 14 Texas Ct. Rep., 518.

The court erred in his main charge to the jury, which reads as follows, to wit: "The plaintiff sues the defendant corporation for alleged injuries he received while attempting to board and enter defendant's train." St. Louis S. W. Ry. Co. v. Smith, 63 S. W. Rep., 1064; Dillingham v. Parker, 80 Texas, 572; Missouri, K. & T. Ry. Co. v. Williams, 40 S. W. Rep., 161; Texas & N. O. Ry. Co. v. Scott, 71 S. W. Rep., 26; Boaz & Co. v. Scheider & Davis, 69 Texas, 131.

The charge is complex, indefinite and confusing; it instructs the jury that if it finds for plaintiff, it should find damages for any impairment of capacity to earn wages (in the future), and to also find such further damages, which, if paid now, would compensate him for any future injuries or damages he may suffer, thus authorizing a double recovery of damages for impairment of capacity to earn wages. International & G. N. Ry. Co. v. Butcher, 12 Texas Ct. Rep., 115.

*J. T. Duncan* and *J. F. Wolters,* for appellee.—A person in the act of getting on a car, and before he has gotten entirely in the car, is a passenger, imposing upon the servants in charge of the car the duty of

exercising such a high degree of foresight as to possible dangers, and such a high degree of prudence in guarding against them, as to be used by very prudent and competent persons, under similar circumstances. Green v. Houston Electric Co., 89 S. W. Rep., 442, and cases there cited.

The degree of care exacted of carriers for the passenger's safety, while he is getting from the vehicle, is of the same lofty degree as that imposed while he is in course of transit. The extraordinary care demanded of the carrier by law continues until the contract of carriage is completed and terminated by the delivery of the passenger at the terminus of his journey, uninjured, and that the contract of a passenger carrier towards its passengers requires the utmost diligence of very cautious persons, rendering them liable for even the slightest negligence. El Paso Electric Ry. Co. v. Harry, 83 S. W. Rep., 738; McKinstry v. St. Louis Transit Co., 82 S. W. Rep., 1108; International & G. N. Ry. Co. v. Halloren, 53 Texas, 53, and cases cited in El Paso Elec. Ry. Co. v. Harry, 83 S. W. Rep., 736.

A failure to give passengers an opportunity to board or leave the train at a station gives a cause of action to any passenger injured thereby. Hull v. East Line Ry., 66 Texas, 619. A railway company should stop a reasonable length of time to allow all passengers to enter the cars, and a reasonable time thereafter for them to become seated. International & G. N. Ry. Co. v. Copeland, 60 Texas, 328. It is the duty of railway trains to stop at a railway station a reasonable length of time to allow passengers to alight, and after boarding to secure seats. Gulf, C. & S. F. Ry. Co. v. Williams, 70 Texas, 159.

The charge was a correct and explicit declaration of the rule of law properly applicable to the facts in this case. It stated what the duty of the railway company was to its passengers; the charge instructed the jury that they should find for the plaintiff, if the appellant had violated its duty towards the appellee, and he had suffered injuries therefrom, unless the plaintiff had failed to exercise that degree of care which a person of ordinary prudence, under like circumstances, would have done, and if the plaintiff had failed to do so, they should find a verdict for the defendant. Green v. Houston Elec. Co., 89 S. W. Rep., 443; Houston & T. C. Ry. Co. v. Copley, 87 S. W. Rep., 219. This last is a case almost identical with the case at bar.

PLEASANTS, ASSOCIATE JUSTICE.—This suit was brought by appellee against the appellant to recover damages for personal injuries alleged to have been caused him by the negligence of appellant's employes. After alleging that plaintiff left his home at Yoakum on September 12, 1902, to go to the town of Schulenburg in Fayette County, and that in making said trip he traveled over the San Antonio and Aransas Pass Railroad to Flatonia Junction where said railroad connected with the appellant road and where appellant had a station at which passengers were received and discharged and tickets sold, the petition further alleges that:

"Plaintiff says that from Flatonia Junction to Schulenburg he had to take passage over the Galveston, Harrisburg and San Antonio Railway, and that he purchased a ticket from the defendant at said railway station, which authorized him to ride on the defendant's railway from

Flatonia to Schulenburg, and by virtue of which the defendant agreed, obligated and covenanted with plaintiff to carry him safely from Flatonia to Schulenburg.

"Plaintiff says that he purchased a ticket or had the money to pay his fare, and when the train of the defendant came along that it stopped at said station for the purpose of receiving and discharging passengers. Plaintiff says that he was carrying two heavy grips, and as soon as the defendant's train stopped that he started to the same for the purpose of taking passage, having already purchased his ticket as aforesaid or was ready to pay his fare and had the money to do so and did after boarding the train pay his fare, but he says that the defendant through the negligence of its employes and servants failed to stop said train a sufficient length of time to enable him to comfortably board said train. The plaintiff says that at the time he had just gotten up from a spell of sickness, was weak and enfeebled, and the defendant's agents and employes saw his condition, or could have seen by the use of reasonable and ordinary care and diligence; that they failed to place any box or other elevation at the steps so as to enable him to ascend the steps of the coach; that it was a considerable distance and a long step from the ground up to the first step of the steps that lead up into the defendant's coach, and that defendant was negligent in not having someone of its employes there with a box or stool or some elevation to enable plaintiff to get into said coach, burdened as he was. And that the defendant was negligent in not having one of its servants present to let down the lower step from said steps, which is usually done to enable passengers to ascend and enter said cars with ease and without any great amount of physical exertion.

"Plaintiff says that before he could ascend said steps and enter said cars that the servants or employes of the defendant signalled the engineer to go ahead, and the train started before he was able to get on said cars with his valises; that he grabbed his valises as best he could, and grabbing the railings of the cars by great exertion he succeeded in boarding said cars, but in exerting himself in getting aboard of said cars, he gave his body a violent wrench and caused his back to become injured, and also caused himself to be ruptured.

"Plaintiff says that if the defendant had have stopped said train at the station for a reasonable length of time for him to have boarded the same, or if the usual facilities had been provided by the servants and employes of the defendant, that he could have entered said cars without hurting or injuring himself."

The defendant answered by general demurrer and general denial and by special plea of contributory negligence in which it is averred generally that plaintiff ought not to recover because if he was injured as alleged in his petition such injury was caused by his own negligence and would not have occurred but for such negligence on the part of plaintiff.

A trial by jury in the court below resulted in a verdict and judgment in favor of plaintiff in the sum of $1,500.

The evidence disclosed by the record sustains the following fact conclusions: While getting on a train on appellant's road at Flatonia, Texas, on the morning of September 4, 1902, plaintiff was by the sudden

starting of the train thrown partially off the steps and in recovering himself and boarding the train he was compelled to exert himself so violently as to cause a rupture from which he has since continuously suffered.   Plaintiff was waiting at the station to take passage on the train when it arrived and had either purchased a ticket entitling him to be carried as a passenger or had the money to pay his fare and did pay same after getting on the car.   The train was not stopped at the station a reasonable time to allow passengers to get on, and those in charge of it were guilty of negligence in starting it suddenly without any warning and without seeing whether plaintiff had succeeded in getting aboard. By the injuries thus received plaintiff has been damaged in the amount found by the jury.

The first assignment of error complains of the ruling of the trial court in not sustaining defendant's general demurrer to the petition. The contention under this assignment is that the petition shows that the plaintiff while in a weak and feeble condition from recent sickness and encumbered and burdened with two heavy grips attempted to board a moving train; and that such acts on plaintiff's part were so wanting in ordinary care that they must be held to be negligence as a matter of law, and being a proximate cause of his injury would preclude his recovery, and therefore the general demurrer to the petition should have been sustained.   We do not think the allegations of the petition above set out should be construed to mean that the train had started before the plaintiff attempted to board it.   The allegation is that "before he could ascend said steps and enter the car the engineer was signalled to go ahead, and the train started before he was able to get on said car with his valises."   Under the rule which requires that as against a general demurrer every reasonable intendment must be indulged in favor of the pleading we think these allegations should be construed to mean that the plaintiff was ascending the steps of the car at the time it started and not that the car was in motion when he started to get on.   Under this construction of the petition the question sought to be presented by the proposition under this assignment does not arise and the assignment must be overruled.

The second assignment complains of the refusal of the court to instruct the jury to find for the defendant on the ground that the pleading and evidence of plaintiff show that he was guilty of such contributory negligence as precludes his recovery.   In discussing the foregoing assignment we have disposed of the question of whether the petition shows negligence on the part of plaintiff.   The testimony of plaintiff as to the circumstances under which he was injured is as follows:   After stating that the train came in late and that when it stopped the brakeman jumped off and he, plaintiff, and another party went to the train to board it, he says:   "This other gentleman ran on the train, got up ahead of me, and by the time I got on the steps the brakeman gave the signal to go, and she pulled out, with just a regular lunge or surge, you might call it, and threw me almost off with my grips.   Did in a manner. One foot on the ground, but I climbed back and held to the grip as well as I could, holding on the rail and finally managed to get on the train without the assistance of anyone.   There was nobody there to assist me.

I never saw either the conductor or the porter. I don't think either one of them was in sight. In fact, I know they were not."

Appellant's contention that the facts in this case show contributory negligence as a matter of law is based upon the theory that the undisputed evidence shows that plaintiff was injured while attempting to get on a moving train. The statement of the plaintiff above set out is that he had gotten on the steps of the car before it started and the sudden moving of the train almost threw him off, and in holding on and regaining his position on the steps he so wrenched and strained himself as to cause the injuries alleged in his petition. This presents an entirely different case from that of one who starts to get on a train after it is put in motion and is injured in attempting to board it or in boarding it. From statements made by plaintiff on a former trial of the cause the jury might have found that the train was in motion when he started to get on, but with the testimony above quoted in the case the court properly refused to take the issue of plaintiff's negligence from the jury, and the assignment can not be sustained.

The third assignment assails the verdict and judgment as unsupported by and contrary to the great preponderance of the evidence. Our conclusion of facts before set out disposes of the questions presented by this assignment. The evidence is conflicting, but in our opinion it is sufficient to sustain the verdict and its preponderance is not so against the verdict as to authorize us to disturb the finding of the jury.

The fourth assignment predicates error upon refusal of the court to sustain an objection offered by appellant to certain testimony elicited by plaintiff from one of defendant's expert witnesses. The testimony and the objection thereto, as shown by the bill of exceptions, is as follows:

"Be it remembered, that at the trial of the above entitled and numbered cause, on the 27th day of November, 1905, when Dr. Otto Ehlinger, a witness for defendant, was being cross-examined by counsel for plaintiff, the following question was asked him: 'Now, then, doctor, a physician who has practiced for twenty-five years actively, who has treated a patient at the age of forty-nine, and says that by that treatment he did cure him, would be in a better position to know than you who are not familiar with the case, and know nothing about it, except what is told you by hypothetical theory?'"

"That counsel for defendant thereupon interposed the following objection: 'We object to that. Sometimes a man may have practiced for a lifetime, and not have acquired any knowledge of the profession of medicine or surgery; now, he asks him (this witness) about a doctor that he knows nothing about, perhaps if he (such doctor) had done so and so, and practiced so and so. He (such doctor) may have practiced several years and not know anything about the subject or treatment of hernia; besides, it is calling for the opinion of this witness about a subject concerning which the jury would be as competent to form an opinion as he.' Which objection the court overruled, and permitted the witness to testify as set forth in the statement of facts or transcript of the testimony; and to which ruling of the court defendant then and there excepted, and now here tenders this, its bill of exception, and prays that same may be signed, sealed, and made a part of the record,

which is accordingly done." The answer of the witness to this question was, "Well, everything being equal he ought to . . . He might know more about that particular case."

Plaintiff and his physician, Dr. Youngkin, had both testified that plaintiff had sustained a rupture of the abdomen about a year before he was injured as claimed by him in this suit, but that he had entirely recovered from such rupture before he received his present injuries. To contradict this testimony the defendant put Dr. Ehlinger on the stand. He had testified as an expert that in his opinion plaintiff could not by the treatment given him by Dr. Youngkin have been cured of the first rupture at the time he received his present injuries, and on cross-examination he was asked the question set out in the bill of exceptions. The court did not err in refusing to sustain the objection offered to this testimony. The purpose of the question was to test the value of the expert opinion of the witness by showing it was not as likely to be correct as that of the physician who had examined and treated the patient. It is true the jury might have reached this conclusion as a matter of common knowledge, but this should not deprive the plaintiff of the right to obtain an admission to that effect from the witness himself.

There is no merit in the fifth assignment of error. The portion of the charge complained of under this assignment is as follows: "The plaintiff sues the defendant corporation for alleged injuries he received while attempting to board and enter defendant's train." We do not see, under any reasonable construction of this language, how the jury could have understood the court to mean that in the opinion of the court the plaintiff had been injured while attempting to board defendant's train; and the contention of appellant that the charge is upon the weight of the evidence in that it "assumes that plaintiff received the injuries alleged in his petition" can not be sustained.

The sixth assignment complains of the following paragraph of the court's charge: "The defendant company owes to a person who attempts to board and enter its train as a passenger, a duty to give a reasonably sufficient time for him to board and enter its train, and reasonably safe mode and place for him to board and enter therein, and any failure to perform this duty with that high degree of care which a person of very great prudence would not omit to do, then such failure, if injury results, directly and approximately therefrom, would be negligence for which the defendant would be liable; and if you so find you will find for plaintiff, unless you believe from the evidence that the plaintiff, under the circumstances surrounding him, failed to exercise that degree of care which a person of ordinary prudence, under like circumstances would have done, and thus injured himself, and in that event you should find for defendant." While this charge is not as clear as it might be we can not say that the jury were likely misled thereby. It does not, as contended by appellant, place the absolute duty upon the defendant, as a matter of law, to stop its train a reasonably sufficient time to enable passengers to get on and enter its cars. While the jury are told that this is a duty owed by the defendant they are further told, in effect, that defendant was only required to use a high degree of care to perform such duty and would be guilty of negligence only in event it failed to

use such care. As thus construed the charge does not present affirmative error.

The following instruction given the jury is complained of by the seventh assignment of error: "If you find for plaintiff, you will find for plaintiff such damages as will reasonably compensate him for injuries received, if any. You will estimate any injuries, if any, thus far sustained, any loss by impairment of capacity to earn wages, any pain, or suffering, or mental anguish, if any, and if his injuries are permanent you will find such further damages, which, if paid now, will compensate him for any future injuries, if any." We do not think the charge is subject to the objection that it authorizes a recovery of double damages. It submits separately the damages already sustained by the plaintiff, and those which he may suffer in the future, if the jury find that his injuries are permanent, and authorizes the jury to take into consideration in estimating the damages thus far sustained any loss by impairment of capacity to earn wages and any pain or suffering or mental anguish, and in event they find that his injuries are permanent to find such further damages as will compensate for future injuries. The charge may not be entirely free from ambiguity, but we do not think it probable that it misled or confused the jury.

The eighth assignment of error complains of the refusal of the court to give the following instructions:

"If, from evidence adduced on the trial of this cause, you find that plaintiff sustained the injuries complained of by him, and if you further find that for a period of about one month immediately prior to the time he sustained such injuries he had been suffering with diarrhoea, and by reason of said sickness was in a weakened and enfeebled condition at the time he received such injuries; that he had theretofore, on July 26, 1901, been ruptured, and at the time of such injuries he had burdened himself with two heavy grips, and that in this condition and under these circumstances he attempted to board a moving train of defendant, and in so doing received the injuries he complains of, and if you further find that a man of ordinary care and prudence would not under such conditions and circumstances (as above stated) have attempted to board such train, then you will find plaintiff guilty of contributory negligence, and return a verdict for defendant."

"If you find from the evidence that, about one month immediately prior to the alleged injuries, plaintiff was afflicted with diarrhoea, and that at the time the injuries were sustained, if you find there were any, he realized that he was in a feeble and weakened condition on account of such affliction, and if you further find that in the month of July, 1901, he was ruptured, and that he understood that a man in such condition would probably sustain injury of like nature by over-exertion, and if you further find that in such feeble condition, and with knowledge of such former rupture, he burdened himself with heavy grips, approximating fifty or sixty pounds in weight, and undertook to board a moving train of defendant, if such was the fact, and if you believe that such conduct was negligence contributing to, or was the proximate cause of the injuries complained of by plaintiff, if any he did sustain, then you will find for defendant."

The issue of contributory negligence was submitted by the court in the charge given the jury. The defendant may have been entitled under the rule announced in Missouri, K. & T. Ry. v. McGlamory (89 Texas, 635), and the case cited in that opinion, to have had the facts relied on to sustain its plea of contributory negligence submitted to the jury in an instruction grouping such facts, but this question is not raised by the proposition presented under the assignment. The proposition is as follows: "For the purpose of determining whether the acts of a passenger in attempting to board a train, shall be deemed negligent *per se*, it is necessary for the jury to find, first, was the act under the circumstances dangerous? Second, was the danger known to the passenger, or so obvious that it can be said that no person of ordinary care and prudence would have committed? In this case, the danger was known to plaintiff, or was so apparent that any rational person must necessarily have known it, and in either case he voluntarily incurred the risk and should be held guilty of contributory negligence as a matter of law, and his right of recovery be denied." We have already disposed of the question of whether the evidence authorized a holding that the plaintiff was guilty of contributory negligence as a matter of law. This is the only point presented by the proposition above quoted and, as we have before said, it can not be sustained.

Appellant requested the court to give the jury the following instruction, which was refused: "The defendant asks the court to charge the jury as follows: Plaintiff alleges in his petition that at the time the injury of which he complains occurred, the defendant had entered into a contract with plaintiff by which it had agreed and obligated itself to him to safely convey and carry him as a passenger on its railway train from Flatonia Junction to Schulenburg. Now, you are instructed that, under the facts and circumstances of this case, the contract alleged is material, and must be proved, and that to complete the contract of carriage it is necessary and essential that plaintiff should have paid the requisite fare for such carriage, and it being an undisputed fact, established by plaintiff's own testimony, that he had not paid the fare at the time the injury occurred, the relation of passenger and carrier had not arisen, and plaintiff's allegation concerning same is not established, and you will therefore find for the defendant." The refusal to give this instruction is complained of under the ninth assignment of error. There is no merit in the assignment. The petition above set out alleges in the alternative that plaintiff had purchased a ticket before he boarded the train or that he had the money to pay his fare and did pay it after getting on the train. Proof of either of these facts would establish the relation of passenger and carrier between him and the defendant and it was not required of him under these allegations to prove any express contract of carriage. He testified that he either paid his fare to the conductor after getting on the train or purchased a ticket from the station agent and there is no testimony to the contrary. This evidence fixed his status as a passenger and it would have been manifest error for the court to have given the requested instruction. The fact that he had no ticket when he boarded the train did not affect his standing as a passenger if he intended to and did pay his fare after he got on.

We are of opinion that the judgment of the court below should be affirmed and it is so ordered.

                                                                *Affirmed.*

Writ of error refused.