MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS v. S. L. DALTON.

Decided May 18, 1909.

**1.—Pleading—Personal Injuries.**

Allegations in the petition, in an action for personal injuries, held sufficiently specific as to the nature and extent of the injuries to enable the defendant to prepare its defense.

**2.—Pleading—Negligence—Railway—Collision.**

Where the plaintiff was injured in a wreck of the train on which he was a passenger caused by a collision between such train and an engine, allegations

that said train, through the carelessness and negligence of the railway company's agents, servants and employes who operated and controlled the movements of its trains, engine and cars, with terrific force ran into and collided with an engine with such force and violence as to cause the passenger coach of the train in which plaintiff was being transported to be jammed together, broken and shattered, and that the car in which plaintiff was riding was struck with such great force as to wreck it, etc., did not limit the charge of negligence to those controlling the passenger train; and the court was authorized to submit the issue though the undisputed evidence showed that the negligence of those in charge of the colliding engine caused the wreck.

### 3.—Measure of Damages—Medical Bills—Charge.

Evidence that the plaintiff was at a sanitarium for treatment, and was charged and paid a certain sum which included medical bills and treatment by certain physicians on the basis of a certain sum per week, authorized the jury to infer that the charges were reasonable; and, there being no evidence that other physicians who treated him charged for their services or intended to charge therefor, the defendant could not complain of a charge which allowed all reasonable and necessary physicians' bills, in the absence of a request for a special charge.

### 4.—Evidence—Expert Testimony.

The opinion of an expert, elicited on cross-examination, that tuberculosis or consumption sometimes results from a lick or traumatism in the region of the lungs, was admissible, over objection that it was speculative and conjectural.

### 5.—Same.

The defendant having brought out testimony of an expert that the symptoms which the plaintiff complained of were those of neurasthenia, but there was no outward evidence demonstrating the presence of such symptoms, it was permissible for the plaintiff to show on cross-examination that a person could suffer from neurasthenia without any objective symptoms of the disease.

### 6.—Same.

Where the evidence showed an injury on the left side of the chest, and the defendant introduced evidence to show that it was a slight bruise, the plaintiff was entitled to show by an expert, who found a bandage over such place but did not remove it in treating the plaintiff, the manner of the dressings and that it indicated there had been a hurt there of some kind, either a broken rib or a bruise.

### 7.—Same—Declarations.

Declarations made by the injured person to his physician while sick and under treatment, in explanation of his symptoms, are admissible as against objection that they are self serving and no part of the res gestae.

### 8.—Same—Suppression of Evidence—Rebuttal.

Where defendant proved that by agreement of counsel the plaintiff was to meet a physician selected by defendant at a certain time and place for examination at defendant's instance, and that he did not appear at the time stated or at any time for such purpose, testimony of a physician who was with him at the time that it would not have been safe for plaintiff to come to town at such time and stand an examination, was admissible in rebuttal, when limited to the purpose of explaining why he did not come in accordance with the agreement.

### 9.—Damages—Verdict Held Excessive.

A verdict awarding damages for personal injuries in the sum of thirty-four thousand dollars held excessive, and remittitur required.

Appeal from the District Court of Hunt County. Tried below before Hon. T. D. Montrose.

*Templeton, Craddock, Crosby & Dinsmore (Coke, Miller & Coke, of counsel), for appellant.*

*William Pierson* and *T. D. Starnes,* for appellee.

BOOKHOUT, ASSOCIATE JUSTICE.—This suit was brought by the appellee against the appellant to recover damages for personal injuries alleged to have been sustained by the appellee on the 27th day of October, 1907, as a passenger on one of appellant's trains. After alleging that appellee was a passenger from Greenville in Hunt County, to Dallas, it was alleged that at a point in Dallas County said train, through the carelessness and negligence of the defendant and its agents, servants and employes who operate and control the movement of its trains, engine and cars, with terrific force ran into and collided with an engine or tender, or with the tender of an engine, or with a train of cars with such force and violence as to cause the passenger coach of the train on which plaintiff was being transported to be jammed together, broken and shattered, and especially was the car or coach in which plaintiff was riding struck with such force and violence as to break and shatter and wreck said car. "That the plaintiff was caught in said wreck or collision and was severely shocked, wounded and bruised. That his left foot was crushed and mangled, and that the tendons, ligaments and muscles of said foot were injured and torn and the bones broken. That as a result of the injury to plaintiff's foot he is now and will likely be a cripple. That said foot, tendons, ligaments, muscles and bones were painfully and permanently injured." It is further alleged that "his side was mashed, crushed, bruised; several of his ribs were fractured or broken. He was injured in and about the chest and lungs. That he received a terrific blow in and about the region of his lungs; that as a result of said trauma or injury the plaintiff now is suffering with tuberculosis or consumption; that plaintiff was injured internally, and that by reason of said injury all of his vital organs have been impaired and permanently injured. That he received a terrific blow on the back of his head laying open the scalp to the bone. That as a result of the lick or wound on the head plaintiff's brain has been greatly and permanently injured. That his memory has been greatly impaired and his mind grievously affected. That as a result of said injury so received the plaintiff is unable to think consecutively or to reason or study, and that the faculties of the mind have been injured and permanently impaired. That he suffers with terrific headaches and is unable to rest or to sleep. That his entire nervous system has been greatly shocked and permanently impaired. That the nerves which supply all the functions of the body have been impaired to such an extent that they no longer perform their functions. That as a result of said injury received he is suffering and will suffer the rest of his life with neurasthenia. That plaintiff's back, spine, spinal cord and spinal column were injured and as a result of the shock and injury received to the back, spine, spinal cord and spinal column, plaintiff is suffering with paralysis, and has been unable to stand upon his feet or move about. Plaintiff's back was severely wrenched and the tendons, muscles and ligaments

and nerves thereof were strained, torn, wrenched and bruised and severely injured. That plaintiff as a result of said injuries was confined to his bed for some months, being unable to lift his head and shoulders. That his spine, spinal cord and spinal column and back, are permanently injured, and that as a result of said injuries plaintiff is suffering with spinal debility and nervous prostration. That he received an injury to his kidneys and bladder and is unable to control his urine, and that his right leg and foot are partially paralyzed and at times he is wholly unable to stand on same or control same in any degree, and that he has by reason of his injury lost the use of his right arm. That he has tingling sensations in his right arm and leg and is wholly unable to control the same. That all of the injuries hereinafter set forth are permanent in their nature, and as a result of same the plaintiff has and will in the future suffer great physical pain and mental anguish."

Appellant answered by special exceptions and by general denial. A trial resulted in a verdict and judgment for plaintiff. Upon the overruling of defendant's motion for new trial an appeal was perfected to this court.

*Conclusions of fact.*—On October 27, 1907, while a passenger on appellant's southbound train, appellee was seriously and permanently injured as the result of a collision of said southbound train with one of appellant's engines which was being propelled north on the same track. The collision resulted from the negligence of the servants and agents of appellant controlling the operation and movements of its trains, cars and engines. By his injuries appellee sustained damage in the sum of $27,500.

*Conclusions of law.*—The first, second, third and fourth assignments of error complain of the action of the court in overruling defendant's special exceptions to the allegations in the petition as to the nature, character and extent of the injuries alleged to have been sustained by plaintiff. The injuries alleged are set out above. The nature and extent of the injuries alleged are sufficiently specific to enable the defendant to prepare its defense, and there was no error in overruling the defendant's special exceptions to the same. (International & G. N. Ry. Co. v. Gready, 36 Texas Civ. App., 536; San Antonio St. Ry. Co. v. Muth, 7 Texas Civ. App., 443; Oliver v. Chapman, 15 Texas, 403.)

The fifth assignment of error assails the third paragraph of the court's main charge to the jury as follows: "Therefore, if you believe from the evidence that the collision of defendant's passenger train with its engine at the time and place mentioned in plaintiff's petition was caused by the failure of defendant to exercise that high degree of foresight as to possible dangers to its passengers, and that high degree of prudence in guarding against them, if you find there was such failure, as would be used by very cautious, prudent and competent persons under similar circumstances, and that said failure, if any, was the proximate cause of plaintiff's injuries, if any, then you will find for the plaintiff; unless you so find, you will find for the defendant." It is contended that the basis of the action and the cause of the acci-

dent and injuries was the negligence of the employes controlling the movement of and operating the passenger train, and that the undisputed evidence shows that the cause of the accident was the negligence of the employes operating the northbound engine, and that those controlling the movement of and operating the passenger train were guilty of no negligence, and that the charge is, therefore, erroneous, misleading, confusing, and without basis in the pleadings. This contention is based on an erroneous view of the petition in using the words "train" and "car" for "trains" and "cars." The specific allegation in the petition to which the contention refers is as follows: "That after the train on which appellee was being transported had reached a point beyond the city of Garland in Dallas County, Texas, said train, through the carelessness and negligence of the defendant and its agents, servants and employes who operate and control the movements of its trains, engine and cars, with terrific force ran into and collided with an engine or tender, or with the tender of an engine, or with a train of cars, or some other object on its said track, with such force and violence as to cause the passenger coach of the train on which plaintiff was being transported to be jammed together, broken and shattered, and especially was the car or coach in which plaintiff was riding struck with such great force and violence as to break and shatter and wreck said car, that plaintiff was caught in said wreck or collision and was severely shocked, wounded and bruised." The charge was correct as applied to the pleading.

Complaint is made of the fourth paragraph of the court's charge which defines the measure of damage as follows: "If you find for plaintiff you will allow him such sum as you find and believe from the evidence will, as a present cash payment, fairly compensate him for his diminished capacity, if any, you find he has sustained on account of his injuries, to labor and earn money; also for the mental and physical pain, if any, he has suffered on account of his injuries, if any, and for the physical and mental pain, if any, you find and believe from the evidence it is reasonably probable he will suffer in the future on account of his injuries, if any, and all reasonable and necessary physicians' bills, if any." It is insisted that this charge is erroneous because there was no evidence as to the medical bills of some of the physicians who treated the plaintiff for his alleged injuries, or that the charges made therefor were reasonable. Again, it is insisted that the charge authorized a recovery by the plaintiff for all physicians' bills incurred by the plaintiff on account of the injuries, there being no evidence as to some of the bills that they were reasonable, and in that as to such bills as were not shown by the evidence to be reasonable the jury were left to their own judgment without legal guide to determine the reasonableness thereof. This assignment is not sustained. There was evidence tending to show the amount of all medical bills which plaintiff was required to pay, and that the same were reasonable. It can not be inferred that the jury considered any medical bill as to which there was no evidence to sustain. The court's charge announced a correct proposition, and in the absence of a requested charge restricting it to the amounts of such medical bills as were shown by the evidence to have been a specific charge made, the

charge as given is not reversible error. The evidence discloses that Drs. W. C. Moody and W. N. Lemmon of Greenville, and Dr. G. H. Moody of the Moody Sanitarium in San Antonio, treated plaintiff. The evidence shows the charges of Drs. W. C. Moody and W. N. Lemmon, and that they were reasonable. The plaintiff was at the Moody Sanitarium in San Antonio for treatment, and was charged and paid $103, which included medical bills and treatment on the basis of $25 per week. The jury were authorized from this evidence to infer such charges were reasonable. The evidence does not disclose that any of the other physicians who treated appellee charged for their services or that they intend to charge therefor. In this condition of the evidence the court's charge was correct. (Dallas Con. Elec. St. Ry. Co. v. Ely, 91 S. W., 888.)

The deposition of Dr. G. H. Moody was taken by defendant. Plaintiff's counsel propounded to said witness his sixth cross-interrogatory as follows: "Does tuberculosis or consumption ever result from a lick or traumatism in the region of the lungs—in the side of the back, in the region of the lungs?" The witness answered, "Yes." Defendant excepted to the question and answer, but its exception was overruled and the evidence admitted. It is contended that this was error, because the question and answer were each and both speculative, conjectural and within the domain of possibilities. as to what might occur or result, and not confined to such consequences as with reasonable probability would ensue as the result of the injuries. As stated, this question was propounded on the cross-examination of an expert witness. The interrogatory was pertinent to the inquiry before the court and jury, and it was proper for appellee on cross-examination to test the accuracy, veracity or credibility of the witness. The evidence was properly admitted. (Missouri, K. & T. Ry. Co. v. Johnson, 49 S. W., 267; Prather v. McClelland, 76 Texas, 575; Rogers' Expert Testimony, sec. 33; Bradner on Evidence, p. 372; Dilleber v. Home Life Ins. Co., 87 N. Y., 79; People v. Augsbury, 97 N. Y., 502.) The question was not speculative or conjectural.

For the same reason there was no error in overruling appellant's objection to that part of cross-interrogatory propounded by appellee to the witness, Dr. G. H. Moody, as follows: "And is it not a fact that a party might suffer serious bodily injuries and that afterwards, while he might be suffering from neurasthenia, all evidences of objective symptoms have disappeared? In other words, may not all the symptoms of neurasthenia in their worst forms exist and not be disclosed by a physical examination?" To which part of said cross-interrogatory the witness answered: "A person might suffer from neurasthenia after all evidences of objective symptoms had disappeared." The appellant in the twelfth direct interrogatory had asked witness, "What, in his opinion, were the ailments or diseases or troubles with which appellee was suffering, and to give fully and in detail appellee's condition while under his observation and treatment," and in answer to such interrogatory the witness says: "His symptoms were all subjective. The symptoms which he complains to have were those of neurasthenia. There was no outward evidence demonstrating the presence of the symptoms which he complained of. We had to take his word for

their presence." Again, the witness is asked in the twenty-fifth direct interrogatory if he did not diagnose appellee's case as neurasthenia, to which the witness answered: "I did not, except conditionally, and upon subjective symptoms." The appellee, in rebuttal of this testimony elicited from the witness on direct examination, was authorized on cross-examination of the witness to show that a person could suffer from neurasthenia without any evidence of objective symptoms of the disease.

While the plaintiff's witness, Dr. W. C. Moody, was on direct examination and had testified that he was called professionally to see, examine and treat the plaintiff at his home in Greenville on Tuesday, October 29, 1907, after he was injured, he was asked this question: "What had been done for him (meaning the plaintiff) prior to the time you saw him; how was he bandaged?" To which the witness answered: "The foot was done up; I examined the foot. I found the foot and it seemed to be done up real well. I did not remove the dressing. I examined the head, and it had been done up, and done up real nicely. I did not remove the dressing. I undertook to examine the side where he complained over the left lung. I found that had been stripped well with a large adhesive strip, some eight inches wide and entirely around the body. I did not disturb that; I did not remove any of the dressing." Whereupon the witness was asked by plaintiff's counsel: "What did the manner and extent of the dressing of the side indicate as to the condition of the side?" To which question and the evidence thereby sought to be elicited the defendant objected, because it was entirely indefinite; that the doctor removed none of it (meaning the dressing) and the question called for an opinion without stating definitely what he found; which objections were by the court overruled and the witness answered that it indicated to him that there had been a hurt there of some kind, either a broken rib or a bruise, or hurt of some character, from the dressing.

It is contended that there was error in admitting this evidence, because it was the statement of an opinion and conclusion based upon conjecture, speculation, indefiniteness and uncertainty. We do not concur in this contention. Dr. Wilson, defendant's witness and one of the surgeons who dressed appellee's wounds the night of the injury, testified: "There was also a slight contusion of the chest on the left side at base of auxiliary space. The extent of this injury was limited to a slight roughness of the surface with a slight partial abrasion, with slight discoloration of the skin, limited to the area of the abrasion. I have stated that I found a slight bruise on the left side of the chest; I made a careful and thorough examination of this wound, requiring plaintiff to take deep inspirations. This was done without any pain, and had there been dislocated or fractured rib or ribs it could not have been accomplished without pain." Defendant's witness, Dr. Keuhne, testified: "There was a slight bruise on the chest. This injury was light, with some discoloration of the skin limited to the bruised space. I have stated all the injury I have found to the chest— a slight bruise and some discoloration." Dr. W. C. Moody testified as follows: "I did not remove the strip around the chest for two weeks; I did not rebind it with a strip. I found when the adhesive strip was

taken off a little bruise over the left lung that seemed to be just below the nipple, just a little bruise, and just below the left nipple. I could not tell whether a rib had been broken or not. Although he could take a full inspiration at that time it gave him a good deal of pain; they got along just like an ordinary hurt would—seemed to get well." Plaintiff testified on cross-examination: "The other pains I had during that day (meaning the first day) were chiefly to the head and chest. As to the hurting in my side, it was mainly in my left side. If I remember right, it was right near the nipple. There was a general feeling of pain in the chest on the left side and above the nipple." This testimony shows conclusively that plaintiff had received an injury of some kind on his chest on the left side, with a discoloration of the skin on the injured space. We are of the opinion that Dr. Moody, who at the time was testifying as an expert, could not only state the manner and extent to which plaintiff was bandaged, but could also testify that such bandaging indicated an injury to his side or ribs. But if this is not so, still we are of the opinion the testimony was harmless, and that its admission presents no reversible error.

The defendant's witness, Dr. G. H. Moody, who testified by deposition, was asked in the third cross-interrogatory propounded by plaintiff, as follows: "Is it not a fact that Mr. Dalton suffered with nervous spells and that he had severe headaches? Did he not complain of lapses of memory, and was he not at times very emotional?" And the answer thereto was: "He complained of nervous spells and of some headaches, and he also complained of impaired memory. He was not especially emotional while under my treatment." Again, in the fourth cross-interrogatory: "If you have answered that he complained of headaches, then please state what character of headaches he complained of? Did he not complain of physical and nervous weakening, and of an inability at first to walk and having impaired memory?" and the answer thereto was: "He did not complain a great deal of headaches while with us, though he said his headaches had previously been more severe. He did not refer this pain to any particular part of his head, and did not describe any special character of pain. Yes, he complained of the troubles mentioned."

The objection to these questions and the answers thereto was that the same were self-serving and no part of the *res gestae*. The objection was overruled and the evidence admitted. In this there was no error. These declarations were made to appellant's physician while he was sick and under treatment, and were admissible in explanation of his symptoms. (Rogers v. Crain, 30 Texas, 286; Missouri, K. & T. Ry. Co. v. Sanders, 12 Texas Civ. App., 5; Texas & P. Ry. Co. v. Barron, 78 Texas, 424.)

It was shown that after the trial had been gone into and plaintiff had testified as a witness in his own behalf, on Tuesday evening it was arranged by agreement between counsel for the plaintiff and the defendant that the plaintiff would appear at the office of Dr. Will Cantrell in Greenville, Texas, at 8:00 o'clock on Wednesday morning for the purpose of being examined physically by said Cantrell, who was to make such examination at the instance of the defendant's counsel, the same to be made in the presence of Drs. W. C. Moody, W. N.

Lemmon and J. A. Smith, physicians who testified in the cause at the instance of plaintiff. It was further shown that Dr. Cantrell did not make the examination and that the plaintiff did not appear at his place of business at 8:00 o'clock on Wednesday morning, or at any other time, for the purpose of being examined. Thereupon in rebuttal the plaintiff placed upon the witness stand Dr. W. C. Moody, who, having testified that he went to the room in the western part of the city of Greenville where plaintiff was early Wednesday morning and there examined and treated the plaintiff, and was asked by plaintiff's counsel this question, after having so testified: "From your examination of his pulse, temperature and appearance and condition, in your judgment would it have been an injury to him or safe for him to have come to town and stood the examination?" To which question the defendant then and there objected and the court sustained the objection. Thereupon attention of the court was directed to the fact by plaintiff's counsel that the defendant had shown that an arrangement had been made for Dr. Will Cantrell to examine the plaintiff at 8:00 o'clock on Wednesday morning, and the court thereupon announced that in view of that he would admit the testimony for that purpose and for nothing else. The defendant objected to the evidence, (1) because it was immaterial and irrelevant; (2) it called for the opinion and conclusion of the witness in and about a matter that did not require or authorize expert testimony; (3) it was incompetent, and in the nature of things it was self-serving. The objections were by the court overruled and the defendant excepted. Thereupon, without the question being answered, this further question was asked by plaintiff's counsel of the witness: "Well, state, in your judgment, whether it would have been safe for him to have come to town and stood an examination." To which last question and the evidence sought to be elicited the defendant objected for the same reasons as above set out, all of which were again overruled by the court, and the witness answered: "I would not think it was safe." There was no error in this ruling. The defendant having shown that an arrangement had been made between counsel for plaintiff and defendant for plaintiff to appear at the office of Dr. Will Cantrell at 8:00 o'clock Wednesday morning for the purpose of being examined physically by him in the presence of Drs. Moody and Lemmon and Smith; and having further shown that Dr. Cantrell did not make the examination, and that plaintiff did not appear at the time stated or at any other time for the purpose of being examined, the testimony complained of was admissible in rebuttal and to explain why plaintiff did not come as per the agreement, and being restricted to that proposition by the court in his statement to the jury, the testimony was properly admitted. (Jones, Law on Evidence, sec. 171 (2d ed.); Wharton, Law of Evidence, sec. 452; Ft. Worth & D. C. Ry. Co. v. Thompson, 75 Texas, 504; Rogers v. Crain, 30 Texas, 287.)

Appellant assigns error that the verdict is excessive. The verdict is for $34,000. The evidence shows that plaintiff at the time of the injury was not yet twenty-eight years of age. That he had just completed his school course and taken his degree at Baylor University in June prior to his injury; that he was earning at the time one hundred

dollars per month; that this was his first employment after getting through school. That he was a young man of good ordinary ability, great energy and purpose, strong character and high ambition, with a very bright future. There is .evidence tending to show that his injuries consist of a contusion of the brain and spinal cord; that he had an injury to his head, producing a contusion and extravasation; that his mind was injured; that from the injury to the spinal column he had a partial paralysis of the lower limbs beginning in the lumbar region of the back and extending to the lower part of the body; that said paralysis is progressive; that he had an injury to his chest and side to the extent of injuring his lungs; that his entire nervous system was shocked to such an extent that he suffers from neurasthenia. Any exertion will bring his fever up, and that his mental and physical condition is such as to wholly incapacitate him for labor of any kind. That he had a serious injury to his kidneys; that the injury to his mind is such that he can not concentrate his thoughts, and that his mind is impaired. On the other hand, it was shown that while appellee was under treatment at the sanitarium in San Antonio he continued to improve; that he walked without a crutch and at times played croquet. Dr. G. H. Moody, the physician in charge, gave it as his opinion that had appellee remained at the sanitarium under treatment he would have recovered. Appellee had a life expectancy of thirty-seven years. Prior to his injuries he was stout, vigorous and robust in health, with every prospect of a prosperous and useful life.

While appellee's injuries are severe, we are of the opinion that the evidence does not justify the verdict. The fact that his condition improved while at the sanitarium tends to show that he may still recover from some of the injuries of which he now complains. In view of this fact and that his earning capacity was only one hundred dollars per month, a verdict for $34,000 seems to us unreasonably large, and larger than any to which our attention is called as having been sustained by any appellate court of this State under a similar state of facts. We can not approve the verdict, but are willing to sustain a judgment for $27,500. If the appellee will enter a remittitur in this court within ten days for $6,500, the judgment will be reformed and affirmed; otherwise it will be reversed and the cause remanded.

*Affirmed on remittitur.*

Writ of error refused.