**GROCERS SUPPLY CO., Inc., et al. v. STUCKEY.**

No. 11231.

Court of Civil Appeals of Texas. Galveston.

June 5, 1941.

Rehearing Denied July 2, 1941.

**912**

Wood, Morrow, Gresham & McCorquodale, A. C. Wood, and Walter E. Boyd, all of Houston, for appellants.

Allen, Helm & Jacobs, Wm. States Jacobs, Jr., and George E. Pike, all of Houston, for appellee.

GRAVES, Justice.

This general statement, thought to be correct as such, after only immaterial alterations, is taken from the appellants' brief:

"This is a suit brought by Monte C. Stuckey for damages for personal injuries allegedly received in an accident on October 20, 1939, on Lyons Avenue, in the City of Houston, Texas.

"Plaintiff alleged that he had parked his truck on the south side of Lyons Avenue up against the curb, and that, while he was inside of his truck, a truck of the defendant Grocers Supply Company, Inc., which was being driven in an easterly direction along Lyons Avenue by the defendant P. H. Cole, negligently collided with the rear end of the plaintiff's truck, proximately causing the injuries and damages complained of by plaintiff.

"Upon a trial of the case the jury, in response to special issues, found negligence and proximate cause against appellants' truck driver: (a) In driving the truck at a speed in excess of twenty miles per hour; (b) in driving the truck at a speed which was dangerous under the circumstances; (c) in failing to keep a proper lookout; (d) in failing to keep the truck under proper control; (e) in failing to reduce the speed of the truck just prior to the collision.

"The jury found that the collision was not the result of an unavoidable accident.

"Each of the ten defensive issues submitted by the defendants was answered unfavorably to the defendants.

"In answer to the damage issue, the jury found the sum of $20,700.

"Upon plaintiff's motion for judgment, as well as the pleadings and evidence, the court rendered judgment against the defendants on October 12, 1940, for the sum of $20,700, with interest from that date at the rate of six per cent per annum."

Inveighing on appeal against the determination so adverse to them below, appellants do so through 9 propositions of law based upon 35 assignments of error, which, in the aggregate, deal with these 4 features of the cause:

(1) Proposition No. 1 complains of the admission of certain evidence adduced by the appellee on cross-examination of appellants' expert witness, through some 15 questions propounded by appellee to him, touching the appellee's physical condition from a medical and scientific standpoint— on the main ground that the questions were hypothetical in character and assumed facts that not only had not been shown on this trial, but were, further, foreign to the material issues involved therein;

(2) Nos. 2, 6, 7, 8, and 9 challenge the answer to special issue No. 36 (as well as the intrinsic correctness of it), wherein the jury awarded the appellee the $20,700 for his injuries, as having been not only too high under the circumstances, but also so excessive in amount and so against the

great weight and preponderance of the testimony in its entirety as to have manifestly been based upon sympathy, passion, or prejudice, hence was clearly wrong;

(3) The third and fourth assail the court's action in having admitted the testimony of the appellee's expert witness, Dr. Ed Cowart, in these two respects: (a) "It is possible that he (appellee) had some muscles and ligaments that were pulled and sprained. The X-rays don't show that"; (b) "an injury to any arthritic joint may simply set up an irritation in that joint, like bending a rusty hinge, or something like that."

(4) The remaining fifth one asserts the court's action to have been prejudicial error, in permitting the appellee to show that, from October of 1929 to April of 1930, his average monthly earnings had been from $250 to $1,000 per month, through his connection with the "Personal Analysis Bureau", selling a professional service for the effective use and development of personality in business; whereas, at the time of this accident on October 20 of 1939, he had merely been averaging about $58 per week for some 10 months immediately prior thereto out of his small business of jobbing candy, gum, and other miscellaneous items—such testimony having been calculated to mislead rather than aid the jury in properly arriving at the appellee's damages from this accident.

Since this court is, at the outset, under bounden duty to determine whether or not appellants' first proposition is entitled to consideration—over the appellee's vigorous objection thereto—despite its great length, it is thus set out in full:

(1) "Where plaintiff brought suit for personal injuries arising out of an accident, and alleged injury to his spine, and on a trial of the case it was shown that within a very short time after the accident (October 20, 1939) he was taken to Jefferson Davis Hospital in Houston in an ambulance, after having been placed on a stretcher by ambulance attendants, and after arriving at Jefferson Davis Hospital he was placed upon a stretcher, and subsequently X-rays were taken of his spine, and that thereafter he was removed to the Pasadena Hospital, at Pasadena, Texas, and X-rays were taken at the Pasadena Hospital some 18 days after the X-rays were taken at Jefferson Davis Hospital, to-wit, November 8, 1939, and Dr. C. F. Os-

born, plaintiff's witness, testified that although he was not a specialist in roentgenology but that he could interpret X-ray films, and that he made the X-rays taken at Pasadena Hospital on November 8, 1939, and that said films positively showed a compression fracture of the ninth thoracic or dorsal vertebra, and defendants placed upon the stand, in succession, Drs. G. E Lechenger, H. F. Poyner, C. P. Harris, and Leonard Myer, all of whom, with the exception of Dr. Poyner, are X-ray specialists, who testified that they had examined the X-rays taken at Jefferson Davis Hospital on the date of the alleged injury and positively that such X-rays did not show any evidence whatsoever of a fracture of the ninth thoracic or dorsal vertebra, and that the only deformity or defect of the ninth thoracic vertebra shown by such X-rays was a condition of long standing, not in any way caused by trauma, described as a 'Schmarl's Node', and explained this condition by stating that between the vertebrae of the spine there are intervertebral discs of cartilage and in the central portion of such discs is a small fluid-like substance called 'nucleus Pulposus' that acts as a cushion or shock absorber, and that above and below the nucleus pulposus on the surface of the cartilage are two thin plates of cartilage, and when these plates break, the semi-fluid or nucleus pulposus runs out and pushes itself through the vertebrae, which is not as hard, for instance, as the front part of one's shin bone, but, rather porous, or sponge like, and that when that process has taken place the rounded out defect resulting in the vertebrae is called a 'Schmarl's Node', and that this condition of plaintiff's spine had existed prior to his alleged accident, and, on rebuttal, plaintiff, himself, produced Dr. R. K. McHenry, an X-ray specialist, who had examined, at the instance of the defendants, the X-rays taken at Jefferson Davis Hospital, and, also, without realizing it was the same man, had made X-rays of plaintiff, and Dr. McHenry substantiated the above witnesses to the effect that there was no fracture of the ninth thoracic vertebra but that the condition was a pre-existing one known as 'Schmarl's Node', and there was absolutely no evidence presented at any time during the trial of the case to the effect that the plaintiff had a condition known as 'Kummel's Disease', and there was absolutely no evidence adduced that the plaintiff had an intervertebral disc of the ninth vertebra

congenitally subject to herniation, but which had not yet herniated, it was error for the court to admit evidence adduced by plaintiff, on cross-examination, of defendants' witness, Dr. Leonard Myer, that there is a type of compression fracture of the vertebra known as 'Kummel's' which requires an abnormal vertebra that does not have the proper structural strength, proper density of calcium, and the additional element of the application of crushing force, and that if an X-ray is taken of one having this abnormality right after he is subject to such crushing blow, the X-ray will not reveal a fracture but that in time another X-ray taken at a later date will reveal a fracture, and the resulting fracture is called 'Kummel's Disease', and 'Kummel's Disease' must have an element of trauma, and, further, to bring out on cross-examination in this connection, that assuming one has an intervertebral disc congenitally subject to herniation of the nucleus pulposus but prior to application of force has not yet herniated, and that there is an inherited proclivity in that direction (facts which were not proven in this case) and that he gets a trauma, is knocked unconscious, is picked up carefully from where he fell and laid on a stretcher by trained ambulance men that know how to handle injured cases, taken to a hospital and is laid on a carrier, and is taken up to the X-ray room and X-rayed, that the probabilities are that the X-rays would ordinarily reflect a normal spine on the day of the injury, because this testimony was an adroitly conceived and successfully executed attempt on the part of plaintiff, over defendants' protest, to, and was reasonably calculated to, and probably did, place before the jury a possible theory, based upon an hypothesis the most important parts of which there was no evidence to sustain but which erroneous hypothesis the average juror is incapable of comprehending and fully appreciating, upon which the jury could by speculation and conjecture arrive at the conclusion that the reason that the Jefferson Davis X-rays did not disclose a fracture of the ninth thoracic vertebra and the Pasadena Hospital X-rays taken 18 days later did disclose to Dr. Osborn a fracture of such vertebra was because the plaintiff, prior to the alleged accident, had a vertebra which did not have the proper structural strength, or had an intervertebral disc congenitally subject to herniation of the nucleus pulposus, and that the application of force received by the plaintiff in the accident resulted in Kummel's Disease, or some fracture, which did not show up in the Jefferson Davis X-rays but did show up 18 days later in the Pasadena Hospital X-rays, and thus the jury was enabled to reconcile the testimony of the highly qualified roentgenologists, Drs. Lechenger, Harris, Myer, and McHenry, with the testimony of general practitioner, Dr. Osborn. It is error for the court to admit testimony in answer to a hypothetical question submitted to an expert where the question assumes facts which are never shown and are foreign to the issues. This rule applies equally as well to cross-examination as to direct examination."

The stated objection, together with cited authorities as supporting it, was this: "It is multifarious in presenting many, possibly 7, separate claims of error on at least 2 different topics of cross-examination, Kummel's Disease and Schmarl's Node, and is not based on adequate assignments, nor confined to the subject matter thereof. The assignments (24 to 33) on which it is based, are defective for the following reasons: No. 24 is not based on a 'timely objection' and there is no motion to strike (R. 416). No. 25 is not based on a 'timely objection' (R.416). No. 26 is too general, there is no 'timely objection', no motion to strike, and no exception (R.417–23). No. 27 is without a 'timely objection' (R.417–18) and is multifarious, involving both Kummel's Disease and a herniated nucleus. No. 30 is not supported by a 'timely objection', there is no exception to any motion to strike, and the question was never answered (R.419–23). No. 31 is too general to be identified in the record (R.416–424). No. 32 is too general and has no 'timely objection' (R.414–424). No. 33 is too general, is multifarious, involving both Kummel's Disease and herniated nucleus, and fails to identify any motion to strike or any part of the record where it may be found. Martin v. Martin [Tex.Civ.App.] 130 S.W. 2d 863, 868, error dismissed, judgment correct; Pure Foods Products v. Gibson [Tex. Civ.App.] 118 S.W.2d 925, error dismissed; Traders & General [Ins. Co.] v. Hill [Tex. Civ.App.] 104 S.W.2d 603, error dismissed; Bettis v. Bettis [Tex.Civ.App.] 83 S.W.2d 1076; St. Paul Mercury Indemnity Co. v. Mullins [Tex.Civ.App.] 73 S.W.2d 932, error dismissed; Sweatt v. Tarrant County [Tex.Civ.App.] 108 S.W.2d 700, error dismissed; Glens Falls Ins. Co. v. Bendy [Tex.Civ.App.] 39 S.W.2d 628, affirmed

[Tex.Com.App.] 58 S.W.2d 1; Johnson v. Johnson [Tex.Civ.App.] 118 S.W.2d 338, error dismissed."

■ Examination of the record verifies the existence of the factual basis for this objection in all the stated details; the appended authorities likewise support each of the given elements of it, especially the main one, that the presentment is so involved and multifarious in mingling many separate claims of error on at least two different topics of the cross-examination— that is, Kummel's Disease and Schmarl's Node—that the objection as an entirety must, perforce, be sustained, and consideration of the proposition, as so tendered here, refused.

It may not be amiss to add, however, that if it were considered as a proper protest against the admission of the 15 questions— so propounded upon cross-examination by the appellee to appellants' expert witness dealing with the separate subjects of Kummel's Disease, herniated nuclei, and Schmarl's Node—it could not be sustained.

■ Indeed, appellants' main supporting authorities from Texas deal only with direct examinations, rather than those on cross, which latter were here alone involved; with much earnestness they urge, however, that there should be further limitations upon the right of a cross-examination in Texas; but, in view of the state of our authorities on that subject, this court can neither see eye-to-eye with them, nor undertake to unsettle what it conceives to be the rule the other way in Texas; in other words, the rule as to cross-examination with us seems to have been authoritatively established, in its main features, to be as thus stated, respectively, by McCormick & Ray's "Texas Law of Evidence", at page 364, and by 19 Texas Jurisprudence, at page 449:

"*Examination of Witnesses—Cross-Examination—The Rule in Texas:*

"The Texas courts, in line with a large minority of jurisdictions, apply the orthodox rule and permit the cross-examination to extend to any matter relevant to the issues. This rule was adopted by the Supreme Court as early as 1853 and has been consistently adhered to since that time. The only limitation is that of relevancy, and even this is not applied with the same strictness in a cross-examination as in the examination in chief. It seems that any fact which bears upon the credit of a witness is a relevant fact."

"*Cross-Examination of Experts—Generally:*—* * * The cross-examiner is allowed a liberal range touching all matters testified to in chief, the scope of the examination resting largely within the discretion of the trial court. Counsel may inquire concerning the witness' qualification to express an opinion, such as his skill, experience, and knowledge, his interest in the litigation, and into any matters tending to show a possible bias. The veracity or credibility of the witness may be attacked, provided the inquiry is relevant.

"*Hypothetical Questions:*—On the cross-examination of an expert counsel may be permitted, for the purpose of testing the skill and accuracy of the witness, to ask him hypothetical questions pertinent to the inquiry, whether the facts assumed in such questions have been testified to by the witness or not. When the expert has given an answer to hypothetical question asked on direct examination, it is also permissible to cross-examine by asking him other hypothetical questions. As we have seen, facts omitted from a hypothetical question on direct examination may be embodied in questions propounded to the expert upon cross-examination."

Those two texts are fully supported in all their reaches by these authorities: Missouri, K. & T. R. Co. v. Dalton, 56 Tex.Civ. App. 82, 120 S.W. 240, writ refused; Missouri, K. & T. R. Co. v. Farris, Tex.Civ. App., 126 S.W. 1174, error refused; Travelers' Ins. Co. v. Lancaster, Tex.Civ.App., 71 S.W.2d 318, error dismissed; Missouri, K. & T. R. Co. v. Johnson, Tex.Civ.App., 49 S.W. 265, affirmed by Supreme Court, 92 Tex. 380, 48 S.W. 568; Texas Employers' Ins. Ass'n v. Jimenez, Tex.Civ.App., 267 S.W. 752, error dismissed; Maryland Cas. Co. v. Sledge, Tex.Civ.App., 46 S.W. 2d 442; Galveston, H. & S. A. R. Co. v. Fink, 44 Tex.Civ.App. 544, 99 S.W.2d 204, error refused; Houston & T. C. R. Co. v. Lindsey, 51 Tex.Civ.App. 67, 110 S.W. 995; Montgomery Ward & Co. v. Levy, Tex. Civ.App., 136 S.W.2d 663, error dismissed; Texas Coca-Cola Bottling Co. v. Lovejoy, Tex.Civ.App., 138 S.W.2d 254, error refused; Foley Bros. Dry Goods Co. v. Settegast, Tex.Civ.App., 133 S.W.2d 228, error refused.

(2) The damage issue made the subject matter of appellants' propositions 2, 6, 7, 8,

**916**

and 9, together with the jury's answer thereto, was this:

"Special Issue No. 36.

"What sum of money, if any, if paid now in cash do you find from a preponderance of the evidence will fairly and reasonably compensate the plaintiff, Monte C. Stuckey, for *his injuries,* if any, *directly and proximately caused by the collision in question,* taking into consideration the following elements of damage and none other:

"(a) Such sum or sums of money, if any, as Monte C. Stuckey has lost as a result of lost time from his work, if any, *as a direct result of his injuries,* if any, *directly and proximately caused by the collision in question,* from the date of said injuries down to the date of this trial.

"(b) The present cash value of such sum or sums of money, if any, as Monte C. Stuckey will in reasonable probability lose in the future beyond the date of this trial because of his diminished capacity to work and earn money in the future, if any, *as a direct result of his injuries,* if any, *directly and proximately caused by the collision in question.*

"(c) Physical pain and mental suffering, if any, suffered by Monte C. Stuckey from the date of the collision to the date of this trial *as a direct result of his injuries,* if any, *directly and proximately caused by the collision in question.*

"(d) The present cash value of such physical pain and mental suffering, if any, which in reasonable probability Monte C. Stuckey will suffer in the future, beyond the date of this trial *as a direct result of his injuries,* if any, *directly and proximately caused by the collision in question.*

"You will not allow any sum of money for the physical pain and mental suffering, if any, either past or future, or loss of earnings, if any, in the past, or such earnings, if any, as Monte C. Stuckey in reasonable probability will lose in the future because of diminished capacity to work and earn money in the future, if any, on account of the condition and disease, if any, which may have existed in Monte C. Stuckey prior to the injuries, if any, received by him on October 20, 1939, except in so far as that condition and disease may have been aggravated by the injuries, if any, sustained by Monte C. Stuckey on October 20, 1939.

"Answer by stating the amount, if any you find for your verdict, in dollars and cents.

"Answer: $20,700.00."

The italics have been added here in emphasis of this court's construction of its various features as not being subject to the criticism levelled at it.

As against the first objection, that it did not limit the damages of the appellee to those directly and proximately caused by the negligence of the appellants, these emphasized recitations therein, in the attending circumstances otherwise shown, unmistakably, it is thought, make plain the contrary, and bring the form of submission clearly within settled rules, as declared in such holdings as these: Smith v. Triplett, Tex.Civ.App., 83 S.W.2d 1104; A.B.C. Storage & Moving Co. v. Herron, Tex.Civ. App., 138 S.W.2d 211, error dismissed; Wells v. Ford, Tex.Civ.App., 118 S.W.2d 420, error dismissed; Younger Bros. v. Ross, Tex.Civ.App., 151 S.W.2d 621, decided by the Galveston Court on May 1, 1941.

The jury thus found the negligence of the appellants to have been a proximate cause of "the injuries of the appellee", and, by the undisputed showing aliunde, there was neither evidence of any other collision nor of any other injuries; wherefore, there can be no doubt, as applied to the facts here, that the damages were limited as to each element thereof to those directly and proximately caused by this collision, as well as to those sustained by this appellee as a direct result of his injuries.

As to the further reiterated complaints under propositions 6 to 9, inclusive, against the $20,700.00—answer of the jury to that inquiry, that it was so excessive in amount, under the evidence heard, as to have been clearly wrong—this court, after a careful review of the statement of facts, is clear in the conclusion that no excessiveness appears; this summary upon that feature, as made in the brief of appellee, is adopted as correctly reflecting the evidence and the findings, upon sufficient support, to-wit: "The evidence showed that the plaintiff had a life-expectancy of 22 years and was earning $58.00 per week at the time of the injury, but had earned only 75 cents in the one year since the wreck, was totally and permanently disabled from doing any kind of work, had suffered severe pain continuously from the date of the accident until the time of the trial, and would probably continue to suffer such pain for the rest of his life, had suffered a concussion of the brain, injuries to his eyes, in-

juries to his spine, including a fracture of a vertebra, a crushing injury to the nerve trunks and sacro-iliac joint, paralysis of the nerves in his thigh, producing a kyphosis of the spine, permanent stiffness of the back and neck, and other injuries."

Such being the facts, under these holdings of our appellate courts, there was no error in allowing that verdict to stand. Wilson v. Freeman, 108 Tex. 121, 185 S.W. 993, Ann.Cas.1918D, 1203; Gulf Casualty Co. v. Bostick, Tex.Civ.App., 116 S.W.2d 915, error dismissed; National Life & Accident Co. v. Muckelroy, Tex.Civ.App., 40 S.W.2d 1115; Texas & N. O. R. Co. v. Bell, Tex.Civ.App., 28 S.W.2d 853, error refused; Texas & N. O. R. Co. v. Rittimann, Tex.Civ.App., 87 S.W.2d 745, error dismissed; International-Great Northern R. Co. v. Hawthorne, Tex.Civ.App., 90 S.W.2d 895; International-Great Northern R. Co. v. Lowry, Tex.Civ.App., 98 S.W.2d 383; A.B.C. Storage & Moving Co. v. Herron, Tex.Civ.App., 138 S.W.2d 211, error dismissed; Bull-Stewart Equipment Co. v. Myers, Tex.Civ.App., 102 S.W.2d 241, error dismissed; Texas & N. O. R. Co. v. McGinnis, Tex.Civ.App., 81 S.W.2d 200, affirmed by Supreme Court, 130 Tex. 338, 109 S.W.2d 160; St. Louis S. W. R. Co. v. Freedman, 18 Tex.Civ.App. 553, 46 S.W. 101, error refused; Houston Electric Co. v. Potter, Tex.Civ.App., 51 S.W.2d 754, error dismissed; Ft. Worth & D. C. R. Co. v. Smithers, Tex.Civ.App., 228 S.W. 637.

(3) The insistence, under propositions 3 and 4, that the two statements quoted, supra, from the testimony of appellee's expert witness, Dr. Cowart, were conjectural and speculative in character, without any basis in the evidence, and not predicated on any reasonable probability that either of those specific conditions in the appellee either existed, or would probably develop, seems hypercritical—in the circumstances shown; when fitted into what had gone before, these statements simply amounted to reasons given by the witness for his expert opinion, he having, just prior to the objections thereto, testified as follows:

"My opinion is that he had an *arthritis* of the spine which this blow or wrench simply lighted up and gave him a painful back. *Now, it is possible that he might have had and probably did have some muscles and ligaments injured, if he had a bruise and swelling on the back. I didn't see that, but I got the history of it.*" (Italics added here).

In addition to this, other medical witnesses, like Drs. Osborn, Bloom, and Poyner, had all testified to essentially the same thing, without objection; so that, in such a setting, it is held that these expressions constituted no sufficient ground for a reversal. Krider v. Hempftling, Tex.Civ.App., 137 S.W.2d 83; Railway Mail Ass'n v. Forbes, Tex.Civ.App., 49 S.W.2d 880, error dismissed; Slayden v. Palmo, 108 Tex. 413, 194 S.W. 1103; Hough v. Grapotte, Tex.Com.App., 90 S.W.2d 1090; Nance v. McClellan, 126 Tex. 580, 89 S.W. 2d 774, 106 A.L.R. 117; Walker v. Great A. & P. Tea Co., 131 Tex. 57, 112 S.W.2d 170.

(4) The admission of proof of appellee's greater earnings from October of 1929 to April of 1930, if error at all, is not thought to have been of such a character as reasonably tended to cause, and probably did cause, the rendition of an improper verdict herein, Rule 62-a.

That testimony cannot be said to have had no advisory effect in enabling the jury to determine the extent of the appellee's earning-power, even 10 years later; that is the principle upon which evidence is receivable of past earnings of one who, by the negligence of another, has been deprived of a part or all of his earning capacity, rather than as having a tendency to, in itself, establish a fixed measure of damages for such a loss—the objective being to thereby furnish the jury a predicate from which they can fairly determine the extent of any shown impairment of earning capacity; indeed, this principle is so well settled that further discussion of it is foreborne. 13 Tex.Jur., 387, and 393; Dallas Consol. Electric St. R. Co. v. Motwiller, 101 Tex. 515, 109 S.W. 918; Hamilton v. Harris, Tex.Civ.App., 223 S.W. 533; Galveston, H. & S. A. R. Co. v. Harling, Tex. Civ.App., 208 S.W. 207; and Id., Tex.Com. App., 260 S.W. 1016; Smith v. Triplett, Tex.Civ.App., 83 S.W.2d 1104; El Paso Elec. R. Co. v. Murphy, 49 Tex.Civ.App. 586, 109 S.W. 489, error refused; Texas Elec. Ry. v. Worthy, Tex.Civ.App., 250 S. W. 710, error dismissed; Galveston, H. & S. A. R. Co. v. Contois, Tex.Civ.App., 279 S.W. 929, affirmed by Tex.Com.App., 288 S. W. 154; Texas & P. Ry. v. Crockett, Tex. Civ.App., 298 S.W. 654, error refused; Wells Fargo & Co. v. Benjamin, Tex.Civ. App., 165 S.W. 120, affirmed by Supreme Court, 107 Tex. 331, 179 S.W. 513; Mis-

918

souri, K. & T. R. Co. v. St. Clair, 21 Tex. Civ.App. 345, 51 S.W. 666, error refused.

It follows from these conclusions that the judgment should be affirmed; it will be so ordered.

Affirmed.

### Motion for Rehearing and Motion for Supplemental Findings of Fact.

Appellants, in their extended motion for rehearing, in 54 grounds, reiterate formally, in haec verba, assignments of error originally relied upon by them for a reversal of this judgment; this court has, however, carefully reconsidered its former judgment and opinion herein, and, being unconvinced of error in that determination, is constrained to adhere to it; as to the insufficiency of appellants' assignments to support their first proposition, see 3 Tex. Jur., page 858, and appended cases. Appellants' motion will, therefore, be overruled.

The appellee, in turn, upon the rehearing, presented a motion upon his part asking the court for a finding of additional facts, claimed by him to indisputably appear from the record, and to materially bear upon its prior holding that, had appellants' first proposition, challenging the testimony elicited on cross-examination from their expert witness, in response to the 15 questions propounded to him, been considered, it could not be sustained; the claimed facts as stated by him were as follows:

"(a) Plaintiff's doctor had already testified that he had a 'compression fracture', and the expert being cross-examined admitted there was a type of 'compression fracture' known as 'Kummel's disease', which was really a traumatic situation.

"(b) Defendant's experts, including the one being cross-examined, had previously testified that plaintiff suffered from a herniated nucleus or 'Schmarl's Node', which some say is a 'congenital weakness', and one of such experts swore sometimes followed 'severe trauma'."

On examination of the record, it is found to verify the quoted statement. It is, therefore, adopted as a finding by this court that such facts appear in the record.

This court's attention has also by him been called to the fact that, subsequently to the objections made by appellants to the 15 cross-questions referred to supra, the same expert was again cross-examined by the appellee on substantially the same subject matter as the 15 questions had to do with,

and, in response thereto, he testified substantially as he had before in answering such 15 questions, to which later testimony no objection was made by appellants.

This situation is reflected by the record, pages 422 to 424, inclusive.

It follows that the appellee's motion should be granted; it will be so ordered.

Appellants' motion refused.

Appellee's motion granted.