## SMITH v. TRIPLETT.

### No. 10070.

Court of Civil Appeals of Texas. Galveston.

May 16, 1935.

Rehearing Denied June 13, 1935.

King, Wood & Morrow and H. Earl Cox, all of Houston, for appellant.

Allen, Helm, Jacobs & Settegast, of Houston, for appellee.

LANE, Justice.

This suit was brought by Janice Triplett against Lynn P. Smith to recover for alleged personal injuries and damages incident thereto. For cause of action plaintiff alleged that on the 10th day of December, 1932, she was a passenger in an automobile which was being operated in an easterly direction on Clinton drive near the city of Houston, and that, when such automobile was in the vicinity of the Municipal Wharves, an automobile truck and trailer loaded with iron pipe was driven by the agents, servants, and employees of Lynn P. Smith across the path of the car in which she was riding, such truck and trailer approaching from the right of the car in which she was riding and passing from an intersecting street into Clinton drive, and across Clinton drive, and that the car in which she was riding ran into the west side of the trailer of such truck, resulting in her claimed injuries, she alleging that the accident occurred in the nighttime, and that it was caused by the failure of Lynn P. Smith to have lights upon the side of such truck, and because of the failure of the agents of Lynn P. Smith to give warning of the position of such truck and trailer upon the highway.

Defendant answered by general denial, by plea of various acts of contributory negligence on the part of the plaintiff, by plea of various acts of negligence upon the part of the driver of the automobile in which plaintiff was riding, and that his negligence was a proximate cause, and the sole proximate cause, of the collision and plaintiff's injuries, and by plea of joint enterprise upon the part of the plaintiff and the driver of the car in which she was riding, and by plea of unavoidable accident.

The cause was set for trial on the 15th day of May, 1933, and on said day defendant Smith filed his first motion for a continuance to procure the attendance, as a witness, of one Charles Dacus, who was at the time of the accident complained of by plaintiff an employee of defendant and on the truck of defendant at the time of said accident. It was stated in the motion that, if present in court, Dacus would testify to certain facts stated therein which, if true, would acquit defendant and its

servants and employees of the acts of negligence charged to him and them by plaintiff, and would tend to prove defendant's plea of contributory negligence on the part of the plaintiff. Due diligence to procure the attendance of Dacus was alleged, and it was also alleged that the testimony which Dacus would give, if present, could not be obtained from any other source, and that such continuance was not sought for delay only but that justice might be done.

After said motion was filed, and before it was disposed of by the court, Dacus, the party named in the motion for continuance, appeared in court, and thereupon said motion was by the court refused.

The cause was again called for trial on the 17th day of May, 1933, and defendant then filed and presented to the court his second motion for a continuance of the cause, which, omitting formal parts, reads as follows: .

"Now comes Lynn P. Smith, one of the defendants in the above entitled and numbered cause, and files this his second motion for a continuance herein, and for such motion would show to the court that the only eye-witnesses to the accident complained of by the plaintiff in her petition who are acquainted with all of the facts connected with said accident and collision known to this defendant are F. M. Gibson, who was driving the truck involved in the collision, and Charles Dacus, who was a helper on said truck. That in the defense of this lawsuit this defendant was relying upon the testimony of both the said F. M. Gibson and the said Charles Dacus to show a state of facts under which there would be no liability on the part of this defendant. That the said F. M. Gibson made a statement under oath as to the facts with reference to said accident, on the 12th day of December, 1932, the original of which statement is attached hereto; that the said Charles Dacus made a statement under oath as to the manner in which said accident occurred, said statement being made on the 16th day of December, 1932, the original of which statement is attached hereto. That according to said sworn statements of said witnesses and to the statements made to this defendant as to the manner in which said accident occurred, it appears that the truck involved was fully lighted, all of the lights thereon, both on the truck and trailer, being ignited. That before said truck pulled into Clinton Drive said Dacus went in front of same out into Clinton Drive for the purpose of warning automobilists that said truck was crossing the road. That the plaintiff's car approached said truck from the west at a rate of speed from thirty-five to forty miles per hour. That the said Dacus attempted to flag or signal the driver of said car, but that the driver wholly ignored him. That said car ran into the side of said truck. That the driver of said car at such time admitted to both of the witnesses that he had whiskey in the car and that the three other occupants of the car had been drinking whiskey. That the driver of said car admitted that the accident was not the fault of the truck operators. That the said Charles Dacus saw said automobile a quarter of a mile away and saw that it was coming at the high rate of speed aforesaid. That said witnesses have since the occurrence of said accident and since the giving of the sworn statements aforesaid and since their statements to the defendant herein, been in communication with the attorneys for the plaintiff in this case, and, in fact, one or both of them were in the offices of the attorneys for the plaintiff on Saturday, May 13th, the Saturday prior to the Monday when this case was set. That said witnesses have given other and additional statements to the attorneys for the plaintiff. That said witnesses have withheld from this defendant and his attorneys knowledge of their whereabouts, but have been in constant communication with the attorneys for the plaintiff, and came to this courthouse at the solicitation of said attorneys. That said witnesses are now in all things hostile to this defendant and to his attorneys, and propose to get on the stand and testify to a different state of facts than is set out in their sworn statements attached hereto and different than stated by them to this defendant.

"That said witnesses now propose to testify that the lights were not burning on their truck, that the Chevrolet automobile in which plaintiff was riding was only being driven at a rate of speed of twenty-two miles per hour; that the driver of the Chevrolet made no statement to them about having liquor in the car; that they saw no liquor in the car; that they saw no indication that the driver or the other occupants of the car had been drinking liquor. That the said Dacus did not get out into the street for the purpose of flagging said car and that the driver of said car

did not state that the accident was not the fault of the truck operators.

"That the foregoing situation comes as a distinct shock and surprise to this defendant and his attorneys, they not being apprised in any manner thereof prior to two o'clock p. m., May 16, 1933. That it would be inequitable to force this defendant into trial at this time. That if given an opportunity, which he asks that the court give him, he may be able to locate other and additional witnesses to the accident aforesaid who will tell the truth about the manner in which the same occurred, and other and additional witnesses whom he can place on the stand to account for his not placing on the stand the hostile witnesses, F. M. Gibson and Charles Dacus, either by showing by such additional witnesses the reasons for the hostility of Dacus and Gibson, or connivance on the part of the plaintiff and the said Dacus and Gibson. That up to this time this defendant and his attorneys were relying upon the said Dacus and Gibson for their defense in this case and saw no necessity for the procurement of a great deal of other testimony as to the manner in which said accident occurred, but since the foregoing has transpired, it is manifest that it is highly important, if this defendant is to have the fair trial which the law contemplates, that he be permitted time to properly work up his defense in this case, and to overcome the effect of the repudiation of Dacus and Gibson of their prior statements.

"That while the foregoing may not constitute legal grounds for continuance in this cause, they certainly constitute equitable grounds, which should be given due consideration by this Honorable Court.

"That this suit was only filed on January 17, 1933, and that this is the first setting of the case for trial. That this motion, in connection with the motion filed on May 15, 1933, is the first motion for a continuance sought by the defendant in this case. That this motion is not filed for purpose of delay, but only that justice may be done and that a grave injustice may not be perpetrated on this defendant."

The affidavits of Dacus and Gibson, the parties mentioned in defendant's second motion for continuance, were attached to said motion as a part thereof, and they show that the statements in the motion as to what the affidavits would show is substantially correct.

This second motion for continuance was overruled, and the case went to trial before a jury on the 17th day of May, 1933.

The cause was submitted to the jury upon 53 special issues, the first and second of which were as follows:

No. 1. "Do you find from a preponderance of the evidence that the truck, trailer and cargo was entering the highway upon which the plaintiff was travelling, without giving any audible warning? Answer 'Yes' or 'No,' as you find the facts to be."

No. 2. "Do you find from a preponderance of the evidence that such act was negligence, as that term has been defined to you? Answer 'Yes' or 'No,' as you find the facts to be."

The jury answered issue No. 1, "Yes," and No. 2, "No."

Issue No. 10 was as follows: "Do you find from a preponderance of the evidence that the loaded truck and trailer was stopped directly across the main traveled highway, just prior to, and at the time of, the collision?" The jury's answer to No. 10 was, "No."

All other issues, including No. 52, relative to negligence on the part of defendant and those relative to contributory negligence on the part of the plaintiff, were answered adversely to the defendant and favorably to the plaintiff.

Special issue No. 53 is as follows:

"What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence will fairly and reasonably compensate the plaintiff, Janice Triplett, for her injuries, if any, proximately caused by the collision in question, taking into consideration the following elements of damage and none other:

"(a) Physical pain suffered by the plaintiff, Janice Triplett, from the time of the collision down to the date of this trial, if any.

"(b) Physical pain which in reasonable probability plaintiff, Janice Triplett, may suffer in the future beyond the date of this trial, if any.

"(c) Mental suffering, if any, suffered by the plaintiff, Janice Triplett, from the date of the collision in question down to the date of this trial, if any.

"(d) Mental suffering, if any, which in reasonable probability the plaintiff, Janice Triplett, may suffer beyond the date of this trial, if any.

"(e) The reasonable cash value of lost earnings from the date of the collision in question down to the date of the trial, if any.

"(f) The reasonable present cash value of the diminished capacity, if any, to labor and earn money in the future beyond the date of the trial.

"(g) The reasonable value of necessary doctors' medical and hospital services rendered to the plaintiff in the treatment of her injuries, if any, not exceeding the sum of $364.00.

"Answer, giving the amount, if any, which you may find for your verdict, in dollars and cents."

To this issue the jury answered: "$5,-000.00."

Upon the findings of the jury and the evidence, judgment was rendered for the plaintiff against defendant for the sum of $5,000, with interest thereon from date of judgment at the rate of 6 per cent. per annum.

From such judgment defendant has appealed to this court.

As already shown, appellant's first motion for continuance, because of the absence of one Dacus, was overruled, because at the time such motion was presented to the court Dacus appeared in court.

Thereafter, and before the case proceeded to trial, appellant filed his second motion for a continuance, which we have above set out in full.

Appellant now contends that the court abused its discretion in not granting such second motion and in doing so committed such error as should cause a reversal of the judgment rendered and a remand of this cause.

We overrule such contention. It is no doubt true, as alleged in the second motion, that counsel for defendant and appellant himself were shocked, and perhaps irreparably surprised, to learn that Gibson and Dacus, who had, only two days after the accident complained of occurred, made the statements set out in the affidavits, copies of which were attached to the second motion for continuance, had become hostile to appellant, and proposed to repudiate the statements made in their affidavits and, if called as witnesses, to testify to a state of facts beneficial to appellee and detrimental to the appellant. The accident in question occurred on the 10th day of December, 1932. The trial of this cause took place on the 17th day of May, 1933, more than five months after the accident, and about four months after Gibson and Dacus had left the employ of appellant. Although at the time the affidavits of Gibson and Dacus were procured they were employees of appellant, and although appellant knew that the testimony of Gibson and Dacus, his employees, if beneficial to him, would likely be discredited as testimony of interested witnesses, it seems that no effort was made on the part of appellant to discover others who would give testimony beneficial to him.

In his second motion for continuance there is an utter failure to state any probability that appellant will be able to secure testimony of any person or persons to supply the expected testimony of Gibson and Dacus. He only states: "That if given an opportunity, which he asks that the court give him, he may be able to locate other and additional witnesses to the accident aforesaid who will tell the truth about the manner in which the same occurred." We are not prepared to hold that the court abused his discretion in overruling appellant's second motion for continuance.

As already stated, the motion for continuance does not state any probability or expectation of getting any other evidence. In the absence of such showing, the court did not abuse his discretion in overruling the motion for continuance.

In a similar case where continuance was sought on the ground of surprise at a trial amendment, the Austin court said in National Life & Accident Insurance Co. v. Hines (Tex. Civ. App.) 50 S.W.(2d) 364, 366: "Appellant moved to strike out the trial amendment, or to continue the cause so as to enable it to meet the testimony of appellee in support of her pleadings of fraud. Neither the motion to strike out the trial amendment, nor for a continuance, nor the motion for a new trial showed that if the continuance had been granted any evidence rebutting the testimony of appellee could have been secured; and in absence of such showing the refusal to continue the case was not error. W. U. Tel. Co. v. Hicks (Tex. Civ. App.) 47 S.W.(2d) 466, and cases there cited."

In Georgia Casualty Co. v. Campbell (Tex. Civ. App.) 266 S. W. 854, 855, it

is said: "Such motions for continuance as here made are addressed to the trial court's discretion and are not to be granted as a matter of law."

Again: "A continuance will not be granted on the mere possibility that the plaintiff might have obtained such evidence, there ought to be at least a probability of its being able so to do" —citing many authorities.

In support of our conclusions above expressed we cite the Western Union Tel. Co. v. Hicks (Tex. Civ. App.) 47 S.W.(2d) 466, and Merchants' & Manufacturers' Inter-Insurance Alliance Co. v. Hansen (Tex. Civ. App.) 258 S. W. 257.

■ During the trial H. Earl Cox, of counsel for appellant, took the stand as a witness for appellant for the purpose of explaining to the jury why appellant, defendant in the trial court, could not afford to call Gibson and Dacus as witnesses for appellant. There being objections urged to the receipt of such testimony by counsel for appellee, the court retired the jury, and in its absence witness Cox testified substantially to the truth of the statements made in the second motion for continuance, which he had sworn to, and requested that he be permitted to so testify before the jury, stating that such testimony was admissible for the purpose of showing the hostility of the two men, Gibson and Dacus, to appellant and their friendly attitude toward appellee and her attorney in explanation of appellant's failure to place them on the witness stand. Counsel for appellee made the following objection to the proposed testimony:

"We object to any of that testimony because it is immaterial, irrelevant and hearsay, is a conclusion of the witness drawn from facts, none of which facts are stated; because it is a self-serving declaration and an attempt to get before the jury testimony to the effect that at one time these witnesses told stories that were beneficial to the defendant without the facts constituting such testimony, without stating the date when same was made, whether it was before or after they left his employ; because it is entirely hearsay as to this plaintiff, in that it is not shown that any statements were made in her presence or at her direction, or that the alleged contradictory statements made subsequent to the making of the sworn statements were made in her presence or at her direction; and it is affirmatively shown that they were made after the beginning of this law suit, on the eve of the trial. There is no guarantee of trustworthiness of the subsequent statements not under oath; it has not been proven that the alleged affidavits were under oath; there is no basis for surprise, in that counsel had learned of those statements before he went to trial. The trial has been going on several days, and the original statements referred to as sworn statements are self-serving in their nature, having been made by these witnesses at a time when they were employed by the defendant. It has not been shown that anything they state therein is relevant or material to the case, and that the statements show nothing more nor less than a statement of fact by the witnesses, which has not been offered by either side.

"Furthermore, it has not been shown that the notary taking the statements in fact properly transcribed the statements made by these witnesses originally, or that he actually swore the witnesses at the time of taking the affidavits. And furthermore, both of said witnesses making said alleged statements have been in this court ever since the beginning of this trial and subject to interrogation on the stand under oath as to what happened and it assumes that those two witnesses, who are in court and under the orders of the court, that they will testify to the truth or that they will contradict prior statements, and there is no proof to show that they will contradict their prior statements, and if such contradiction is made and it is the truth, then this matter should be presented from the witness-stand by the witnesses themselves.

"And further, because it has not been shown what diligence counsel has used in undertaking to acquaint himself with any possible change of feeling, and it is apparent in evidence that both of these witnesses left the employ of the defendant shortly after the accident complained of; it is not shown that counsel has ever, at any time discussed this case with either one of the witnesses or undertaken to acquaint himself with their testimony; it is not shown what diligence was used to find out the truth or lack of truth of what was actually contained in these affidavits; and because it is an attempt to bring before the jury an antagonism between the witnesses and this defendant which would be prejudicial to the rights of this plain-

tiff without offering her the right to cross-examine them."

These objections were sustained by the court.

Appellant presents the ruling of the court in excluding the proffered testimony from the jury as reversible error.

We overrule appellant's contention. Under the decisions of our Courts of Appeals, that where the witness is equally available to both parties, or has left the employ of one of the parties, or is not peculiarly within his power or influence, a failure to call him raises no particular presumption.

In Reynolds v. Ry. Co., 38 Tex. Civ. App. 273, 85 S. W. 323 (error denied), the syllabus of the case, which is amply borne out by the decision, states: "Where a servant who witnessed an injury to another servant had voluntarily left the employ of his master, and was living in a distant state, where he was equally accessible to both the injured servant and the master, no presumption against either party could be drawn from his failure to call such servant as a witness."

In Davis v. Castile, 257 S. W. 870, 873, by the Commission of Appeals, which was an action against the Director General of Railroads for negligence, Judge German stated the rule as follows: "Besides, there was no proof showing the whereabouts of Webb, or that he was living, or in the employment of defendant, or any reason why he was not just as available to plaintiff as to defendant. The rule that when one party to a suit is in possession of facts, and it is his duty to disclose them, if he fails or refuses to do so it will be presumed that they are unfavorable to him, has no application here."

As the evidence in the case at bar showed that the two witnesses had left the employ of the defendant, were no longer in his power, and were in attendance at court and equally available to both parties, the rule announced in the foregoing cases should apply, and counsel should not be allowed to give his self-serving reasons for not using them.

■ The possibility of the jury's giving probative weight to the circumstance of the defendant's failure to call these witnesses should have been taken care of by a requested cautionary instruction to the effect that no inference should be drawn from his failure to use them as witnesses. Speer, Law of Special Issues in Texas, § 140.

■ Appellant requested the court to submit to the jury his specially requested group of issues instructing them to find, first, whether or not the driver of the automobile in which appellee was riding at the time of the accident slackened the speed thereof upon approaching the cross street leading to Municipal Docks upon which the truck of appellee was proceeding; second, if they should find that the driver failed to slacken his speed, then to find if such failure was negligence upon his part; and, third, if they should find that the driver had failed to slacken his speed and that such failure was negligence, then find whether or not such negligence was the sole proximate cause of the collision.

The court refused to submit such inquiries, and appellant assigns such refusal as reversible error.

We think the issues requested were substantially and sufficiently covered by the numerous issues submitted by the court. We therefore overrule appellant's contention.

■ By appellant's fifth proposition it is contended that the evidence shows that appellee had not worked "at any employment since the year 1931, and that the only search she had made for employment was during a three or four weeks period immediately after the cessation of her employment in 1931, and the evidence showing that she was not employed during the year 1932 and made no effort to secure employment during that year, and the evidence further showing that she sustained her claimed injuries on December 10, 1932, there was no testimony in the record raising the issue as to the reasonable cash value of the lost earnings of appellee from the date of her claimed injuries until the date of the trial, and the court erred in submitting such issue to the jury."

We overrule appellant's contention. There was evidence showing that in 1931 appellee was earning a salary of about $50 a month and tips at a restaurant, which averaged about $3 per day, for a period of about eight months, and that before that she had worked at the St. Regis confectionery in Houston making $12.50 per week, and that prior to her injury she had applied to the St. Regis five or six times for re-employment, and that by reason of

her injuries she had been totally disabled to do any work from the time of such injuries to the date of the trial of this case. In view of such showing, the court did not err in submitting as an element of damage the reasonable cash value of the lost earnings from the date of the collision, which resulted in appellee's injuries, down to the date of the trial, if any. 13 Texas Jurisprudence, 178; 13 Texas Jurisprudence, 393; El Paso Elec. Co. v. Murphy, 49 Tex. Civ. App. 586, 109 S. W. 489, 490; Galveston, H. & S. A. Ry. Co. v. Harling (Tex. Com. App.) 260 S. W. 1016; Missouri, K. & T. Ry. Co. v. Flood, 35 Tex. Civ. App. 197, 79 S. W. 1106; Wichita Falls, R. & Fort Worth Ry. Co. v. Baker (Tex. Civ. App.) 242 S. W. 273; Dallas Consolidated Elec. Street Ry. Co. v. Motwiller, 101 Tex. 515, 109 S. W. 918.

In 13 Texas Jurisprudence, 178, it is said: " * * * He is entitled to recover for the reasonable value of his services for the time lost by him on account of his injuries, although it appears that at the time of injury he was not actually engaged in any employment and not earning anything. It will not be presumed that he would not have secured employment had he not been injured. Where the testimony renders certain the amount of time lost and the value thereof, there is no room for the jury to indulge in speculation or estimation. * * * "

In El Paso Elec. Ry. Co. v. Murphy, supra, it is said: " * * * One who has impaired the earning capacity of another, when called upon to redress the wrong, cannot be heard to say: 'You had ceased to use your capacity to earn money when I injured you, and would not have exercised it again had you not been injured.' * * * "

The other cases cited support the rule announced in the above quotations.

■ By appellant's sixth and seventh propositions it is substantially contended that there was no showing that appellee suffered mentally in the past 'or that she would probably so suffer in the future, other than such suffering as might be assumed from the personal injuries shown; that appellee was only entitled to recover damages for such mental suffering in the past and future as was proximately caused by the physical injuries sustained by her in the accident, and therefore the trial court erred in instructing the jury that in assessing appellee's damages they should take into consideration "the mental suffering of the appellee in the past and in the future 'proximately caused by the collision in question,' such instruction not confining the jury in their deliberation to such mental suffering which the appellee may have had in the past and might have in the future as a proximate result of the physical injuries which she sustained, but permitting them to award damages because of all distress of mind of any nature whatsoever that she might have had in the past or might have in the future because of the 'collision.' "

We overrule appellant's contention. The undisputed evidence shows that appellee suffered serious personal injuries as a result of the collision, the only collision at any time mentioned in the proceedings of the trial of the cause. In view of the evidence showing that appellee had suffered serious personal bodily injuries as a result of the collision, the only collision in controversy in the case, the contention of appellant here made is hypercritical and without merit. From the facts showing serious personal and bodily injury, it may be presumed that appellee did suffer mentally as well as physically. There was not even a hint that any mental suffering by appellee could have been caused by anything other than the injury suffered as a result of the collision in question.

In 13 Texas Jurisprudence, at page 223, it is said: "Distress of mind is presumed to be a consequence of bodily injury or a maiming of the person."

The rule stated in the quotation next above is strongly sustained by the following well-considered cases: Texas & Pacific Ry. Co. v. Curry, 64 Tex. 85; Texas Utilities Co. v. Dear (Tex. Civ. App.) 64 S. W.(2d) 807.

■ The court in his charge defined the term "proximate cause" as follows:

"By the term 'proximate cause,' as used in this charge, is meant a cause which in a natural and continuous sequence, unbroken by any new and independent cause, produces an event, and from which cause it should have been reasonably foreseen or anticipated, by a person of ordinary prudence, in the exercise of ordinary care, that the injuries complained of, if any, or some similar injuries would result therefrom, as a natural and probable consequence.

"There may be more than one proximate cause."

Appellant in his eighth proposition contends that the definition made was erroneous, misleading, and constitutes reversible error.

We overrule the contention of appellant, and as authority for so doing we cite Karotkin Furniture Co. v. Decker, 50 S.W. (2d) 795 (Tex. Com. App.); Crump v. Hellams (Tex. Civ. App.) 41 S.W.(2d) 288.

For the reasons pointed out, the judgment is affirmed.

Affirmed.