**BORDER APPAREL–EAST, INC., Appellant,**

v.

**Isabel GUADIAN, Appellee.**

No. 08–93–00117–CV.

Court of Appeals of Texas, El Paso.

Dec. 31, 1993.

Rehearing Overruled Jan. 16, 1994.

Steven L. Hughes, Mounce & Galatzan, El Paso, for appellant.

Ben H. Langford, El Paso, for appellee.

Before OSBORN, C.J., and BARAJAS and LARSEN, JJ.

## OPINION

BARAJAS, Justice.

This is an appeal from a judgment rendered against Border Apparel–East, Inc., Appellant, for the sum of $300,100 plus interest and costs following a jury trial of a nonsubscriber negligence case. In a single point of error, Appellant attacks the trial court's order overruling Appellant's Motion for New Trial. We reverse the judgment of the trial court.

## I. SUMMARY OF THE EVIDENCE

Isabel Guadian, Appellee, brought this action against Appellant, her employer, for injuries sustained as a result of a slip and fall at her work site. The record in the instant case demonstrates that at the time of trial, Appellee was 46 years old with a seventh grade education. She began working in the garment industry at the age of 17 as a sewing machine operator and had continued in this vocation until her injury in October of 1990. The record shows that as a result of the accident, Appellee is no longer able to perform the work that she performed prior to her injury.

The record shows that at the time of trial, sewing machine operators in Appellant's employ were paid minimum wage, with additional pay according to a piece-rate system.[1] While the president of Appellant company testified that the average pay for a good operator was approximately $5.50 per hour, an operator could make up to $7 per hour depending on the speed of work. There is no evidence as to how much Appellee actually

---

1. The piece-rate system was described by the president of Appellant company as requiring the operators to meet certain production quotas, beyond which the operator's pay is increased. Consequently, the faster an operator works, the more money per hour he or she earns. Neither the precise formula for the piece-rate determination of each operator's pay nor the person in charge of making this determination can be found in the record.

had been earning prior to her injury.[2]

The jury awarded Appellee the sum of $237,120 for loss of earning capacity in the future, in addition to other damages. Appellant filed a motion for new trial, contending in part that the evidence at trial was factually insufficient to support the award of the above sum for loss of earning capacity in the future. The trial court overruled Appellant's motion, forming the basis of this appeal.

## II. DISCUSSION

In its sole point of error, Appellant asserts that the trial court erred in overruling its motion for new trial. Specifically, Appellant asserts that the award of $237,120 for loss of earning capacity in the future is not supported by factually sufficient evidence. Appellant further asserts that the award is excessive because it has not been reduced to present value.[3]

### A. Standard of Review

A refusal to grant a motion for a new trial is tested by the abuse of discretion standard. *Jackson v. Van Winkle,* 660 S.W.2d 807, 809 (Tex.1983); *Eikenhorst v. Eikenhorst,* 746 S.W.2d 882, 886 (Tex.App.—Houston [1st Dist.] 1988, no writ). An appellate court should reverse a trial court for abuse of discretion only when "after searching the record, it is clear that the trial court's decision was arbitrary and unreasonable." *Simon v. York Crane & Rigging Co., Inc.,* 739 S.W.2d 793, 795 (Tex.1987).

The test for abuse of discretion is not whether, in the opinion of this Court, the facts present an appropriate case for the trial court's actions. Rather, it is a question of whether the court acted without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *citing Craddock v. Sunshine Bus Lines,* 134 Tex. 388, 133 S.W.2d 124, 126 (1939). Another way of stating the test is whether the act was arbitrary or unreasonable. *Id.* at 242, *citing Smithson v. Cessna Aircraft Co.,* 665 S.W.2d 439, 443 (Tex.1984); *Landry v. Travelers Ins. Co.,* 458 S.W.2d 649, 651 (Tex.1970). The mere fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Downer,* 701 S.W.2d at 242, *citing Southwestern Bell Telephone Co. v. Johnson,* 389 S.W.2d 645, 648 (Tex.1965) and *Jones v. Strayhorn,* 159 Tex. 421, 321 S.W.2d 290, 295 (Tex.1959). A mere error of judgment is not an abuse of discretion. *Loftin v. Martin,* 776 S.W.2d 145, 146 (Tex.1989).

A factual insufficiency point requires us to examine all of the evidence in determining whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (Tex.1951); *Oechsner v. Ameritrust Texas, N.A.,* 840 S.W.2d 131, 136 (Tex.App.—El Paso 1992, writ denied); *Chandler v. Chandler,* 842 S.W.2d 829, 832–33 (Tex.App.—El Paso 1992, writ denied). The reviewing court cannot substitute its conclusions for those of the jury. If there is sufficient competent evidence of probative force to support the finding, it must be sustained. *Oechsner v. Ameritrust Texas, N.A.,* 840 S.W.2d at 136; *Chandler,* 842 S.W.2d at 833. It is not within the province of the

---

**2.** The record shows that Appellee's attorney, in his opening statement, stated that Appellee made about $5 per hour. Further, in his closing argument, he used the $5 per hour figure once again to compute the amount of Appellee's loss of earning capacity, based on a work-life expectancy of fourteen additional years. The record however, is strangely silent as to any evidence to support such a contention.

**3.** Appellant's sole point of error is multifarious in nature insofar as it embraces more than one specific ground of error. *Pooser v. Lovett Square Townhomes Owners' Assoc.,* 702 S.W.2d 226, 228 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). While this Court is not required to consider multifarious points of error, it will do so in the interest of justice. *Wheat v. Delcourt,* 708 S.W.2d 897, 901 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.).

court to interfere with the jury's resolution of conflicts in the evidence or to pass on the weight or credibility of the witness's testimony. *Benoit v. Wilson,* 239 S.W.2d 792 (Tex. 1951); *Reynolds v. Kessler,* 669 S.W.2d 801, 807 .(Tex.App.—El Paso 1984, no writ). Where there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive. *Montgomery Ward & Co. v. Scharrenbeck,* 204 S.W.2d 508 (Tex. 1947); *Oechsner,* 840 S.W.2d at 136; *Chandler,* 842 S.W.2d at 833.

### B. Burden of Proof in Establishing Loss of Earning Capacity

■ Lost earnings refer to an actual loss of income due to an inability to perform a specific job that a party held from the time an injury was incurred to the date of trial; loss of earning capacity, or diminished capacity to earn a livelihood, encompasses the plaintiff's impairment to work after the date of trial. *See Bonney v. San Antonio Transit Co.,* 325 S.W.2d 117, 121 (Tex.1959). The central question to the proper disposition of the instant appeal is not what Appellee actually earned prior to her injury, but what her capacity to earn a livelihood actually was, and to what extent that capacity has been impaired. *See Crown Plumbing, Inc. v. Petrozak,* 751 S.W.2d 936, 938 (Tex.App.—Houston [14th Dist] 1988, writ denied).

■ Loss of earning capacity that a plaintiff will suffer in the future is always uncertain and is left largely to the jury's sound judgment and discretion. *McIver v. Gloria,* 140 Tex. 566, 169 S.W.2d 710, 712 (1943); *Tri–State Motor Transit Co. v. Nicar,* 765 S.W.2d 486, 492, (Tex.App.—Houston [14th Dist.] 1989, no writ). There is no general rule governing the proof required, except that each case is judged on its particular facts and the damages need be proved only to the degree to which they are ascertainable. *See Bonney v. San Antonio Transit Co.,* 325 S.W.2d 121. Recovery for loss of future earning capacity does not require a showing of lost earnings, although the most obvious and direct proof of loss of earning

capacity is loss of earnings themselves. *Springer v. Baggs,* 500 S.W.2d 541, 544 (Tex. Civ.App.—Texarkana 1973, writ ref'd n.r.e.); *see also Ryan v. Hardin,* 495 S.W.2d 345 (Tex.Civ.App.—Austin 1973, no writ). Furthermore, as *Springer* explains,

> Factors such as stamina, efficiency, ability to work with pain, and the weakness and degenerative changes which naturally result from an injury and from long suffered pain are legitimate considerations in determining whether or not a person has experienced an impairment in future earning capacity.

500 S.W.2d at 544–45; *see also Tri–State Motor Transit Co. v. Nicar,* 765 S.W.2d at 492. Consequently, damages for loss of earning capacity need not be based on any specific degree of physical impairment, but can, and should be based on a composite of the above factors, all of which may directly affect one's capacity to earn a livelihood. *Id.; see also Goldston Corp. v. Hernandez,* 714 S.W.2d 350, 352 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.).

■ After carefully reviewing the record as a whole, we are unable to find sufficient competent evidence to support the jury's award of $237,120 for loss of earning capacity in the future. While we recognize that the amount of such damages must be left to the sound discretion and judgment of the jury, the jury should not be left to mere conjecture where the facts upon which the jury could base an intelligent answer could be readily obtained. *Paragon Hotel Corp. v. Ramirez,* 783 S.W.2d 654, 661 (Tex.App.—El Paso 1989, writ denied).

We first examine the first and most obvious factor in determining loss of earning capacity, i.e., Appellee's loss of earnings themselves. In the instant case, the facts of Appellee's actual earnings prior to her injury were readily available to Appellee and could have been presented to the jury. This essential evidence, while not dispositive of the issue, and but only one method of proving lost earning capacity, would have permitted the jury to make a reasonable projection of Appellee's future income potential.

As discussed above, the president of Appellant company testified that sewing machine operators were paid minimum wage, $4.25 per hour, with additional pay on a piece-rate system. This evidence does not, however, shed any light on how much Appellee was in fact earning as a sewing machine operator.[4] *See Jones v. Martin,* 481 S.W.2d 467 (Tex.Civ.App.—Texarkana 1972, no writ). Appellee herself failed to present any evidence as to her earning power prior to her injury or how many hours per week she worked, nor did she present any evidence as to her work-life expectancy or the future growth rate of wages for sewing machine operators in general. There was no evidence that Appellee ever reached her production quotas, thereby entitling her to a salary over and above minimum wage. She very well may have greatly exceeded the quotas and earned substantially more than the minimum wage. The record is silent as to the number of hours worked per week, whether her work history was one of a full-time or part-time worker. She may have worked fewer than forty hours per week, or she may have worked more than forty hours per week. The record is almost completely devoid of any evidence of Appellee's performance on the job.[5] Moreover, there is no evidence of any tax records to the extent they show Appellee's earnings from work, *Wilkins v. Royal Indemnity Co.,* 592 S.W.2d 64 (Tex. Civ.App.—Tyler 1979, no writ); no evidence of any fringe benefits to which Appellee would be entitled, in addition to her minimum wage salary, *see Tom's Toasted Peanuts, Inc. v. Doucette,* 469 S.W.2d 399 (Tex.

Civ.App.—Beaumont 1971, writ ref'd n.r.e.); and no evidence to any prospects for Appellee's advancement or promotion with increased pay, if there is "reasonable prospect." *Smith v. Triplett,* 83 S.W.2d 1104 (Tex.Civ.App.—Galveston 1935, no writ); *see also Ingleside v. Kneuper,* 768 S.W.2d 451 (Tex.App.—Austin 1989, writ denied).

We next view any other factors which would generally affect one's capacity to earn a livelihood, and find that Appellee has failed to present evidence as to her stamina, her efficiency, or any other evidence as to the existence of any other weaknesses or other degenerative changes which occurred as a natural result of having sustained her injury. *See Tri–State Motor Transit Co. v. Nicar,* 765 S.W.2d at 492. Thus, while evidence of Appellee's loss of earning capacity need not be based on any specific degree of physical impairment, nor based exclusively on loss of earnings, but rather on a composite of all factors which generally may directly affect one's capacity to earn a livelihood, we find the jury's award for loss of earning capacity in the future is not supported by factually sufficient evidence. Based upon the dearth of any such evidence in the record, the jury was simply left to speculate on Appellee's actual earnings prior to her injury, on the effect of her injury on her stamina and on her efficiency, and thus were left to surmise to what extent Appellee's earning capacity, i.e., her ability to earn a livelihood had been impaired as a result of her injury.[6]

The absence of sufficient evidence of future wage expectancies leads us to the con-

---

**4.** We emphasize once again that actual earnings in the past are not necessarily indicative of the loss of earning capacity in the future, but such evidence is at least a factor that can be considered in making the damage award calculation. *Texas Dept. of Human Services v. Hinds,* 860 S.W.2d 893, 900–901 (Tex.App.—El Paso 1993, writ requested). Indeed, under certain circumstances, such evidence may be the most accurate indication of earning capacity in the future.

**5.** The record shows that in response to a question asking how Appellee was as a worker before her injury, a co-worker testified that, "She was okay. She was always sewing." Other than some testimony and documentary evidence of

her attendance record at work, this was the only evidence of Appellee's job performance.

**6.** The statements of Appellee's attorney that Appellee had been earning approximately $5 per hour and had a work-life expectancy of fourteen years, made during his opening statements and jury argument, are not competent evidence that could support the jury's finding. *Collier Servs. Corp. v. Salinas,* 812 S.W.2d 372, 377 (Tex. App.—Corpus Christi 1991, no writ); *Eckerdt v. Frostex Foods, Inc.,* 802 S.W.2d 70, 71 (Tex. App.—Austin 1990, no writ); *see* Tex.R.Civ.Evid. 603.

clusion that the jury was unnecessarily deprived of sufficient evidence from which to calculate future lost earning capacity to a degree of certainty to which it is susceptible. *See Paragon Hotel*, 783 S.W.2d at 661–62. Accordingly, Appellant's sole point of error is sustained. Because Appellee failed to establish an essential element of the proper measure of damages, the judgment of the trial court is reversed and the cause remanded for a retrial of all issues, since the damages are unliquidated and liability was contested. *Id.* at 662; Tex.R.App.P. 81(b)(1). Having found the evidence insufficient to support the jury's award of $237,120 for loss of future earning capacity, we need not address whether this award was excessive because it was not discounted to present value by the jury.

The judgment of the trial court is reversed and the cause remanded for a retrial of all issues.

OSBORN, Chief Justice, concurring.

I concur and agree with all of Justice Barajas' opinion. I write as to one issue which he did not need to address but an issue which has been raised by the Appellant. Were the damages as found by the jury in this case reduced to present value?

Appellant argues that the jury's verdict resulted from a calculation like this:

> $6.00 per hour wage rate
> 40 hours per week
> =$240.00 per week in wages
> 52 weeks per year
> =$12,480.00 wages per year
> 19 years (Plaintiff age 46 to 65)
> =$237,120.00 Total Damages

It is suggested that the jury award the total damages with no discount for present cash value.

Our courts are in agreement that damages for losses that will occur in the future must be discounted at the time of the judgment. That was the message from The United States Supreme Court in *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 103 S.Ct. 2541, 76 L.Ed.2d 768, (1983). The Court wrote:

'[I]n all cases where it is reasonable to suppose that interest may safely be earned upon the amount that is awarded, the ascertained future benefits ought to be discounted in the making up on the award.'

*Id.* at 536–37, 103 S.Ct. at 2550.

This discount includes damages for lost earning capacity. *Westbrook v. General Tire and Rubber Co.*, 754 F.2d 1233 (5th Cir. 1985); *Culver v. Slater Boat Co.*, 722 F.2d 114 (1983).

In *Missouri Pacific Railroad Co. v. Kimbrell*, 160 Tex. 542, 334 S.W.2d 283 (Tex. 1960), the Court recognized that the proper measure of damages under the F.E.L.A. for the loss of future benefits "is the present value thereof." *Id.* at 285. The Court said "In our practice, while the jury must assess damages to accrue in the future on the basis of their amount if paid now in cash, still no evidence of the earning power of money must be introduced." *Id.* In effect, the Court concluded that the jury knows and therefore can take judicial knowledge of interest rates and then determine a proper discount.

I conclude the Court was wrong on both counts. Perhaps in 1960, interest rates fluctuated very little. That is not true anymore. Every adult alive has seen interest rates go from 6 or 8 percent to 18 percent and now back to 2.5 or 18 percent depending on whether you use the rate paid by a bank on a checking account or the rate paid by a consumer on a credit card account. What is the rate today? Prime is 6 percent. Is that the rate jurors use to calculate a discount? Who knows? And if it is, how many jurors know the prime rate at any given time? Not many.

Even if we assume that 12 jurors know the proper rate on the day they begin their deliberation, are we to assume they can apply that rate to arrive at the cost of an annuity to pay a given sum over a given period of time? The Justices on the Supreme Court certainly made that assumption in 1960. I would not make that assumption today. In *C & H Nationwide, Inc. v.*

*Thompson,* 37 Tex.Sup.Ct.J. 149, 155, 1993 WL 433421 (Tex.1993), the Court in the opinion by Justice Hecht said:

> Present value is not simply a judgment call by the jury but a mathematical calculation.

In this case, as in that one, there is no evidence from which to calculate present value.

If the court instructs the jury to find the amount of damages "if paid now in cash" should it not require proof upon which that determination can be made? If pain and suffering are submitted, there must be some evidence, if lost wages are submitted, there must be some evidence. Why should an instruction telling the jury to do a certain thing (reduce to cash value) not also require proof?

The solution, it seems to me, is to ask the jury to find future damages with no instruction to reduce the amount to present cash value and then, after the verdict is returned, let the trial judge, based upon discount rates and annuity tables presented to the judge, reduce the future damages to present value in the final judgment. *See* 28 Tex.Jur.3d, *Damages,* § 292 (1993); 3 Am.Jur., *Proof of Facts,* (1959) Appendix Fig. 11–14. That seems to be a better solution than requiring a plaintiff to present expert testimony in every case or doing as we now do and permit the jury to speculate on a matter it is not qualified to decide and without adequate instructions from the trial court.

LARSEN, Justice, dissenting.

I respectfully dissent. I believe the majority has confused the proof needed to show lost wages in the past with the proof needed to show loss of earning *capacity,* the element of damage at issue here. The majority states that "there is no evidence as to how much Appellee actually had been earning prior to her injury." While this may be of importance in reviewing a damage award for lost wages, it is not essential in reviewing an award for loss of wage earning *capacity.* The majority's decision is based almost wholly upon this conclusion:

> Appellee's actual earnings prior to her injury were readily available to Appellee and could have been presented to the jury. This essential element would have permitted the jury to make a reasonable projection of Appellee's future income potential.

The majority implies that a plaintiff *must* present evidence of her own work history, fringe benefits, and dashed hopes for advancement to sustain an award for future loss of earning capacity.[1] Ms. Guadian undeniably did not present such evidence. The majority therefore holds that "[b]ased upon the dearth of any such evidence in the record, the jury was simply left to speculate on Appellee's actual earnings prior to her injury." I disagree that this dangerously narrow interpretation of the law precludes plaintiff's recovery for loss of earning capacity here.

Proof of a plaintiff's own "actual earnings prior to her injury" is not essential to recovery for lost earning capacity. Indeed, courts have frequently deemed that very evidence irrelevant in examining such an award, holding that even where an injured party may work and earn more than before an injury, that does not bar recovery for loss of earning capacity. *See Soriano v. Medina,* 648 S.W.2d 426, 429 (Tex.App.—San Antonio 1983, no writ); *Southwestern Bell Telephone Co. v. Sims,* 615 S.W.2d 858, 864 (Tex.App.—Houston [1st Dist.] 1981, no writ); *City of Houston v. Riggins,* 568 S.W.2d 188, 193

---

1. The majority also finds it significant that Ms. Guadian did not prove how many hours per week she was working before her injury. Although this may likewise be significant in determining lost wages, it is not fatal to award lost wage earning capacity, which can be based upon full-time work even where a plaintiff is working part time, or is not employed outside the home when an injury occurs. *See Liberty Mut. Fire Ins.* *Co. v. Richards,* 704 S.W.2d 399, 402 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.) (part-time worker entitled to recover compensation for loss of earning capacity on full-time basis); *C.E. Duke's Wrecker Serv. v. Oakley,* 526 S.W.2d 228, 236 (Tex.App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.) (woman not employed outside the home at time of injury entitled to recover loss of wage earning capacity).

(Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.). Proof of plaintiff's earning history is one method of proving lost earning capacity, but it is certainly not exclusive and courts have consistently held that diminished earning capacity is speculative, that the jury's discretion is entitled to great deference, and that no particular evidence is required to demonstrate loss of earning capacity. Each case must be judged by its own peculiar facts. *Tri–State Motor Transit Co. v. Nicar,* 765 S.W.2d 486, 492 (Tex.App.—Houston [1st Dist.] 1989, no writ). In *Tri–State,* the Court observed:

> Factors such as stamina, efficiency, ability to work with pain, and the weakness and degenerative changes' which naturally result from an injury and from long suffered pain are legitimate considerations in determining whether or not a person has experienced an impairment in future earning capacity.

*Id.* Loss of earning capacity is thus properly based upon a composite of all factors affecting a person's ability to work, and should not be reviewed solely upon the evidence of that individual's work, actual work history prior to injury.

*Crown Plumbing, Inc. v. Petrozak,* 751 S.W.2d 936, 938–39 (Tex.App.—Houston [14th Dist.] 1988, writ denied) illustrates my point. In that case, like this one, an employee sued his non-subscribing employer for negligence. Petrozak was a master plumber who had worked for Crown Plumbing only a short time when he was injured. He sustained serious back injuries when he fell through a ceiling after his plumber's helper threw a lit torch towards him. As here, Petrozak presented no evidence of either his *actual earnings* during the years prior to his injury or his earning capacity after his injury. *Petrozak* at 938. *Citing Texas Farm Products v. Leva,* 535 S.W.2d 953 (Tex.Civ.App.—Tyler 1976, no writ), the Court found Petrozak had nevertheless clearly met his evidentiary burden:

> [T]he matter to be determined is not what he actually earned before his injury, but what his earning capacity actually was, and to what extent that capacity has been impaired.

*Petrozak* at 938. The *Petrozak* Court also observed, *citing Remuda Oil & Gas Co. v. Nobles,* 613 S.W.2d 312 (Tex.App.—Fort Worth 1981, no writ):

> In fact, the overwhelming weight of authority ... concurs that a plaintiff may submit *either* his actual earnings *or* a monetary measure of his earning capacity. [Emphasis in original].

*Id.* at 939. In this case, there was sufficient evidence from which a jury could determine plaintiff's lost wage earning capacity. Ms. Guadian was a seamstress her entire working life; she sewed all day, was "always working." Her injury prevented her from returning to this work, the only type she had ever known. Based upon the piece-rate system, she could earn anywhere from the minimum wage of $4.25 an hour up to $7.00 per hour. Testimony established that $5.50 is average for a good operator. Thus, I would hold this case is *distinguishable* from *Bonney v. San Antonio Transit Co.,* 325 S.W.2d 117, 121 (Tex.1959), because there plaintiff presented no evidence of either his own earnings prior to injury *or* another monetary measure of his damages. Here, plaintiff did provide the jury with just such a monetary measure. I believe the majority errs in focussing solely upon the personal work history of Ms. Guadian, where other evidence upon which an award could be based was before the factfinder. The jury was within its sound judgment and discretion in making this award, and I would hold that it should not be overturned on that basis.[2]

---

**2.** Because the majority opinion does not reach     the issue of whether this element of damage was

discounted to present value, I express no opinion on that issue, which I nevertheless believe is the true subject of this appeal.