

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00734-CV

Sabian R. **SANTOS**,
Appellant

v.

Rene **DELUNA**,
Appellee

From the 150th Judicial District Court, Bexar County, Texas
Trial Court No. 2019CI13781
Honorable Antonia Arteaga, Judge Presiding

Opinion by:    Rebeca C. Martinez, Chief Justice

Sitting:    Rebeca C. Martinez, Chief Justice
Luz Elena D. Chapa, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: January 24, 2024

AFFIRMED

Sabian R. Santos appeals from a final judgment, rendered in accordance with a jury verdict, that awards Rene Deluna $100,267.58 for damages stemming from a motor vehicle accident. In three issues, Santos argues that: (1) the trial court abused its discretion in failing to grant a mistrial after Santos testified that he believed his insurance should be held responsible for Deluna's medical expenses; (2) the evidence is legally and factually insufficient to support the jury's award of $50,000.00 for Deluna's past loss of earning capacity; and (3) alternatively, we should suggest a remittitur as to the jury's award of Deluna's past loss of earning capacity. We affirm.

# I. Mistrial

In Santos's first issue, he argues that the "trial court abused its discretion in failing to grant a mistrial after [he admitted to being] protected by indemnity insurance."  On direct examination by Deluna, Santos testified:

> Q.     Regardless of any positions you've taken prior, you accept responsibility for this accident, correct?
>
> A.     Yes, sir.
>
> Q.     Who do you think should be held to pay Mr. DeLuna's medical bills in the past?
>
> A.     I believe my insurance.
>
> Q.     Who do you think should be held responsible for future medical necessities of Mr. De Luna?
>
> A.     My insurance.
>
> SANTOS'S COUNSEL: Your Honor, may we approach?

Outside the presence of the jury, the parties argued:

> SANTOS'S COUNSEL:   Yes, Your Honor. Thank you.  On cross-examination of our client, Sabian Santos, Plaintiff's counsel elicited some testimony that we believe is highly prejudicial, and it could or it probably will influence the jury at this point.  There w[ere] two times when the answer to the questions posed w[as] "insurance," and we had a motion in limine on that, in Defendant's Motion in limine, which was agreed to.[1]  There was no prior bench conference by Plaintiff's counsel in an attempt to get the Court's approval to ask questions that would elicit an "insurance" response. I am not saying that that was [Deluna's Counsel's] s intent when asking it, but as we all know, it's cross-examination; and the question could have been tailored to avoid that kind of outcome.  And I am asking, at this point, for a mistrial.
>
> DELUNA'S COUNSEL:   Your Honor, it was not my intent to elicit that.  I assumed that the witness had been instructed regarding — in that regard.   I simply asked who does he feel should be

---

[1] On appeal, Santos makes no mention of any in limine agreement.

SANTOS'S COUNSEL: responsible for these things. He offered the concept of insurance solely on his own. I had no — it was not my intent to elicit any reference to his auto insurance policy. He responded, Your Honor. It was just an average question. One that I've asked many times in almost every single one of my personal injury cases involving motor vehicle collisions.

SANTOS'S COUNSEL: While it may not have been the intent to elicit that testimony, the question could have been asked: Do you believe you're responsible or should be held responsible for this accident and the injuries and the bills and everything else he wanted to ask. The — my client, Mr. Santos, was instructed numerous times. This is not my first rodeo either. It is not my — I do not believe that we did anything to create this situation. I believe that because Mr. Santos is, you know, an average citizen, while we did give the instruction numerous times not to mention insurance, at that point, with the question that was posed to him, I believe that was the only honest answer he thought he could give. And at this point, I think that that's — the jury has already heard it twice. Had it been maybe once, in passing. But twice, back-to-back, it's a very hard statement to overcome, and the bell can't be unrung at this point.

COURT: Respectfully, this is our first day, and I'm not inclined to grant a mistrial. I sympathize with you, but I don't believe that the question was meant to elicit it. And so let's go ahead and get it straightened out. I'm happy to instruct the jury, although, I'm afraid that's going to just put more of a highlight on it. But if you'd like for me to, I'd be happy to. Initially, in their instructions I gave them, it was to make certain that they not consider whether there's insurance or no insurance here. And so I gave them that instruction. I can follow up tomorrow, if you would like me to, if you want to consult with your team and see if you want me to. But, respectfully, I cannot grant — I will not grant a mistrial at this time for those reasons. Anything more?

Santos did not request the instruction offered by the trial court, and none was given.

Santos makes four arguments. First, Santos argues that "[i]t is error to admit evidence of a defendant's liability insurance because doing so informs the jury that someone other than the defendant may be required to pay the damages awarded by the jury." Second, Santos argues that

"the issue of [his] liability insurance was deliberately injected through the artful questions of counsel." Third, Santos argues that "the jury awarded more damages to [Deluna] than it would have otherwise had it not learned that someone other than [Santos] may be liable for the judgment." Fourth, Santos argues that Deluna's "artful questions" coupled with the jury's award of "inflated damages" establishes that the "trial court's denial of a mistrial" was "incurable error." Relatedly, Santos insists that he satisfied the requirements of Texas Rule of Appellate Procedure 33.1(a) by, among other things, obtaining an adverse ruling on his oral motion for a mistrial.

Deluna responds by arguing that Santos failed to preserve his first issue by not objecting to the testimony and not requesting an instruction to disregard the inadvertent testimony regarding insurance.

In *Alamo Community College District v. Browning Construction Co.*, 131 S.W.3d 146, 157 (Tex. App.—San Antonio 2004, pet. denied), the client of a general contractor argued that the trial court erred in allowing the general contractor to make two references to the architect's insurance coverage. We noted that the client failed to object in either instance. *Id*. Nevertheless, the client, as Santos does here, argued "these references to insurance are incurable error, implying it did not have to object." *Id*. We rejected the client's argument, writing that "[t]his proposition, however, does not square with Texas law." *Id*. (citing *Dennis v. Hulse*, 362 S.W.2d 308, 309 (Tex. 1962); *Meyers v. Searcy*, 488 S.W.2d 509, 514–15 (Tex. Civ. App.—San Antonio 1972, no writ)). We further held that "[b]ecause [the client] has waived any complaint to the alleged mentions of insurance, and because mention of insurance is not incurable error, we overrule this issue on appeal." *Id*. Santos makes no mention of *Alamo Community College*. However, it squarely governs our analysis and requires us to overrule Santos's first issue. Santos's first issue is overruled.

**II. PAST LOSS OF EARNING CAPACITY**

In Santos's second issue, he argues that the evidence is legally and factually insufficient to support the jury's award of $50,000.00 for past loss of earning capacity. In Santos's third issue, he alternatively argues that he is entitled to remittitur. Deluna responds by arguing that Santos confuses "lost earnings" with "loss of earning capacity."

**A.     Standard of Review**

When reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We must credit favorable evidence if a reasonable fact finder could and disregard contrary evidence unless a reasonable fact finder could not. *Id*. at 827. To sustain a challenge to the legal sufficiency of the evidence supporting a jury finding, the reviewing court must find that: (1) there is a complete lack of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) there is no more than a mere scintilla of evidence to prove a vital fact; or (4) the evidence conclusively established the opposite of a vital fact. *Id*. at 810.

In reviewing a factual insufficiency point, this court must weigh all of the evidence in the record. *Flying J Inc. v. Meda, Inc.*, 373 S.W.3d 680, 690 (Tex. App.—San Antonio 2012, no pet.) (citing *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (per curiam)). A factual sufficiency attack on an issue on which the appellant did not have the burden of proof requires the complaining party to demonstrate there is insufficient evidence to support the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). A reviewing court will reverse the trial court "only if the evidence which supports the jury's finding is so weak as to be clearly wrong and manifestly unjust." *Star Enter. v. Marze*, 61 S.W.3d 449, 462 (Tex. App.—San Antonio 2001, pet. denied) (citing *Cain v.*

*Bain*, 709 S.W.2d 175, 176 (Tex.1986)); *see also Dyson v. Olin Corp.*, 692 S.W.2d 456, 457 (Tex. 1985).

We apply these standards mindful that this court is not a fact finder. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998). The trier of fact is the sole judge of witnesses' credibility and the weight afforded their testimony. *See City of Keller*, 168 S.W.3d at 819–20.

**B.     Applicable Law**

Santos references two opinions from the Seventh Court of Appeals in support of his second issue. First, Santos references *Koko Motel, Inc. v. Mayo*, 91 S.W.3d 41, 51 (Tex. App.—Amarillo 2002, pet denied), wherein the court explained that "lost earning capacity concerns the impairment to one's ability to work" and that "[i]t entails the consideration of what the plaintiff's capacity to earn a livelihood actually was and assesses the extent to which it was impaired." *Id*. (citing *Strauss v. Continental Airlines, Inc.*, 67 S.W.3d 428, 435 (Tex. App.—Houston [14th Dist.] 2002, no pet.); *Border Apparel–East, Inc. v. Guadian*, 868 S.W.2d 894, 897 (Tex. App.—El Paso 1993, no writ)). In *Koko Motel*, the court surveyed evidence relating to the personal-injury plaintiff's weekly earnings before a slip-and-fall incident and an expert's opinions regarding the plaintiff's lost earning capacity in assessing the personal-injury defendant's legal and factual sufficiency challenge. *Id*. at 43, 51–52.

Second, Santos references *Lamb v. Franklin*, 976 S.W.2d 339, 344 (Tex. App.—Amarillo 1998, no writ), wherein the personal-injury defendant challenged the legal and factual sufficiency of the evidence supporting lost earnings sustained in the past by the plaintiff. The court wrote:

> The jury found that Lamb suffered a loss of $2,000.00 earnings in the past. However, Lamb testified that she had not lost any pay during the time she was away from work. The only evidence possibly supporting an award for lost earnings comes from testimony that Lamb missed 28 1/2 days of work as a result of her injuries. However, there is no evidence in the record showing that Lamb's sick leave was compensable time; that is, there is no evidence that by using sick leave, Lamb was losing any wages or compensation. Accordingly, the trial court erred in

overruling the appellees' objections and motions notwithstanding the verdict as to the jury award on lost earnings.

*Id*.

**C.    Analysis**

Deluna testified that, before the May 22, 2018 accident, he earned $6,000 a month in take-home pay as a sand coordinator at Triple J. Deluna further testified that, after the accident, Triple J required a "work release" before allowing him to return to his prior position. However, according to Deluna, his treating physicians did not release him to return to work for approximately eleven months. When Deluna was released to return to work by his treating physicians, he could no longer haul the "big, heavy hoses," and he was limited to "more e-mails and updates and parking the truck." In Deluna's summation, he requested an award of $66,000.00 for loss of earning capacity sustained in the past. The jury awarded him $50,000.00.

Santos references *Lamb*, 976 S.W.2d at 344, and argues that:

An award of past lost earnings is not supported by sufficient evidence where there is no evidence that the time missed from work was compensable. Here, there was no testimony as to whether Plaintiff's eleven-month absence from work was paid time off. There were also no pay stubs, handbooks, or other employment documents admitted into evidence that would have shown Triple J's time-off policy. And Plaintiff never testified one way or the other as to whether he was being paid during those eleven months.

We have held that "[t]here is a difference in the proof required to establish loss of earning capacity and that required to establish lost earnings in the past." *Carr v. Galvan*, 650 S.W.2d 864, 867 (Tex. App.—San Antonio 1983, writ ref'd n.r.e.). "Past lost earnings are the actual loss of income due to an inability to perform a specific job a party held from the time of injury to the date of trial." *Strauss*, 67 S.W.3d at 435. "Recovery for loss of earning capacity is not based on the actual earnings lost, but rather on the loss of capacity to earn money." *Id*. Accordingly, Santos's reliance on *Lamb* for his proposition that it sets "pay stubs, handbooks, or other employment

documents" as an evidentiary threshold for the recovery of a loss of earning capacity sustained in the past is misplaced.

The jury may have reasonably inferred that Deluna's treating physicians' refusal to release him to work for eleven months is legally sufficient evidence that his "capacity to earn a livelihood actually was . . . impaired." *Koko Motel*, 91 S.W.3d at 51. Deluna also testified that before the accident, he earned $6,000.00 a month as a sand coordinator. There is, therefore, legally sufficient evidence supporting the jury's award of $50,000.00 for Deluna's past loss of earning capacity. Similarly, we cannot say that the jury's award is so weak as to be clearly wrong and manifestly unjust. Santos's second and third issues are overruled. *See Pope v. Moore*, 711 S.W.2d 622, 624 (Tex. 1986) (per curiam) ("Since the proper remittitur standard is factual sufficiency, it was improper for the court of appeals to order a remittitur after finding factual sufficiency.").

### III. CONCLUSION

We affirm the trial court's judgment.

Rebeca C. Martinez, Chief Justice